SHERMAN *v.* BURTON.

1. CONTRACTS — PUBLIC POLICY — PHYSICIAN AND PATIENT—WITNESSES.
   A contract to compensate a physician for services rendered in connection with personal injuries of a patient, by a stipulated share of such damages as the latter might recover for his injuries, the parties contemplating that the physician should be a witness as to the extent thereof, is void as against public policy.

2. SAME.
   Good faith of the parties is not the test of its validity, which is determined by the tendency of the agreement.

Error to Wayne; Hosmer, J. Submitted February 15, 1911. (Docket No. 194.) Decided March 31, 1911.

Assumpsit by Andrew T. Sherman against George E.

Burton on a special contract. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*Cullen, Casgrain & Hanley,* for appellant.

*James H. Pound,* for appellee.

BLAIR, J. Plaintiff brought this suit to recover the amount alleged to be due upon the following agreement in writing:

"DETROIT, MICH., March 14th, 1906.

"I, Geo. E. Burton of the city of Detroit, do hereby agree as follows with Dr. A. T. Sherman of the same place. I will pay to the said Dr. A. T. Sherman for professional services, one-third of any sum which I may receive from the Detroit United Railway, as damages, arising out of an injury to me on said D. U. R. Dec. 7th, 1905.

"And I further agree to pay to said Dr. Sherman the sum of ninety dollars ($90.00) in addition to the above-mentioned one-third if the amount received by me is two thousand or more dollars, that is, if the settlement is made outside of courts.

"GEO. E. BURTON."

The facts as stated by plaintiff are that he is a practicing physician and was called to treat plaintiff December 10, 1905, for an injury to his knee, the result of a collision between cars of the Detroit United Railway Company; that the agreement was drawn at the urgent request of defendant and against the objection of plaintiff, that he preferred to get pay for the work he did; that Mr. Martin, the claim agent of the Detroit United Railway Company, saw him with reference to the case several times at his office; that between the time he first attended defendant and the making of the agreement defendant told him that he was going to bring suit against the railway company:

"When treating Mr. Burton, he told me he was contemplating bringing suit for the accident, and, at his re-

quest, I took him to a lawyer, but that was after the signing of the contract. At Mr. Burton's request I had Dr. J. B. Kennedy examine him. The D. U. R. had Dr. Wyman examine him. I also called in Dr. Spademan and Dr. Walker at the request of Mr. Burton. I also called in Dr. McLean at Mr. Burton's request. * * * I never offered my influence with the Detroit United Railway, nor anything of that kind. , I told Mr. Burton that if he thought Dr. Wyman could do more for him than I could, I was willing to give up the case and hand it over to Dr. Wyman, and have Mr. Burton pay me what was due me up to date. But he said no; he would not do that. This was two or three weeks before the settlement. * * * I gave Mr. Burton the bill, Exhibit 4, as he said he was figuring on a settlement with the Detroit United Railway, and he said the Detroit United Railway wanted a bill of me, and he said not to make the bill over $300. He said that the Detroit United Railway wanted a bill of me. I made the bill at the first instance and fixed the amount at his instance at $300. I drew it myself, it is in my handwriting."

Exhibit 4 is as follows:

"DETROIT, MICH., June 1, 1906.
"Mr. GEORGE E. BURTON,
          "To DR. ANDREW T. SHERMAN, Dr.
          "205 Trumbull Ave., corner Leverette,
          "Between Michigan Ave. and Baker St.
"To professional services:
          "Calls _____$225
          "Plaster casts _____  65

"Before he closed the matter with the Detroit United Railway he came to my office and asked me if I would be satisfied if he settled for $1,800, and I told him it made no difference to me what he settled for, as long as he was satisfied; and later he informed me that he had settled the claim for $1,800. Later Mr. Burton paid me the $100 that he borrowed, and $290 for services. Ninety dollars of the $290 was paid after suit was commenced by me, and I claim that there is still due to me upon the principal of the contract $310."

The testimony in behalf of the defendant tended to show that plaintiff suggested the making of the agreement; told defendant that he had a good case against the De-

troit United Railway Company; told him that he had a very bad knee; spoke about tuberculosis in it—

"Said he was going to get me so many thousand dollars right away quick, from five to seven thousand dollars; but did not say how he was going to do it.   I never knew about the contract until he put it under my nose.   He said the leg might possibly run into that disease; that it would have to be amputated, which alarmed me.   Before signing the contract, he never mentioned it to me.   It was all done about 10 o'clock one morning.   He said he had great weight with the Detroit United Railway; he had somebody in the office connected there that would give information, and that they were very willing to settle any cases where they were at fault, and my being a business man, drawing a salary as I am, would be of influence; that I had a good, big shove."

That it was finally agreed to destroy the agreement, and plaintiff reported that he had done so and put in the bill, Exhibit 4, to show the amount actually due him, and the payment thereof was a full settlement between them. Mr. Martin, the claim agent, testified that plaintiff told him he had no interest in the case whatever; this was denied by plaintiff.

The circuit judge directed a verdict in favor of defendant upon the ground that the agreement was in contravention of public policy, within the principle of *Thomas* v. *Caulkett*, 57 Mich. 392 (24 N. W. 154, 58 Am. Rep. 369).   Plaintiff brings the record to this court for review upon writ of error.

We concur in the opinion of the circuit judge that the principle of *Thomas* v. *Caulkett* applies to this case. The good faith of the parties to the contract is not the test of its validity; but, as said in the case referred to:

"The contract must be measured by its tendency, and not merely by what was done to carry it out."

At the time the agreement was made, the parties contemplated that unless a settlement were made a suit would be instituted against the railway company, and the agreement expressly provided that, if the matter was settled

out of court for $2,000 or over, the plaintiff should receive $90 in addition to one-third of the amount received. The amount which the defendant could obtain from the railway company must depend principally upon the nature, extent, and character of his injuries, to be determined by the testimony of experts like the plaintiff, and in no small degree by their opinions, incapable of conclusive refutation before a jury of nonexperts. We think it necessarily follows from the circumstances of the case as disclosed by the plaintiff and the agreement that the parties contemplated that the plaintiff should be a witness in case of suit and should give a history of, and opinion upon, the case in the event of a proposed settlement. The plaintiff's interest in the amount of the damages furnished a powerful motive for exaggeration, suppression, and misrepresentation, a temptation to swell the damages so likely to color his testimony as to be inimical to the pure administration of justice, and therefore invalid.

The judgment is affirmed.

HOOKER, MOORE, McALVAY, and BROOKE JJ., concurred.