CHICAGO & NORTHWESTERN RAILWAY COMPANY and another, Appellants, vs. RAILROAD COMMISSION and another, Respondents.

*November 18—December 13, 1921.*

*Public utilities: Right of railroad to remove spur track: Jurisdiction of railroad commission: Equity: Injunction: Order of railroad commission to replace track.*

1. The act of a railroad company, believing in good faith that it had a right to do so, in peaceably tearing up one of its spur tracks in a hasty manner early in the day, though for the purpose of avoiding litigation, annoyance, or delay and of accommodating another shipper, will not preclude it from seeking the aid of a court of equity by application for a temporary injunction against the enforcement of an order of the railroad commission to replace the track.

2. One of the ancient maxims of equity is that he who "hath committed iniquity shall not have equity;" but this rule has never applied to a situation where a person in good faith, in a peaceable manner, under claim of right, and with no litigation pending has taken some action in reference to property he deemed his own.

3. Where the cost of replacing the spur track was about $2,300, which would be wasted if it should be finally determined that the railroad company was acting within its rights, and where damages will adequately compensate the shipper who used the track, a temporary injunction against an order of the railroad commission requiring the restoration of the spur track should be granted.

[4. Whether railroads may remove spur tracks constructed at their expense without applying to the railroad commission, not decided.]

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The appeal is from an order refusing a temporary injunction restraining the enforcement of an order of the *Railroad Commission* ordering the restoration of a spur track.

The track in question was built in 1883 by the plaintiff companies at their own expense to serve the *Thompson Plow & Engine Company* of Beloit, Wisconsin. Leaving the main

track, it passed along the edge of the Rock river through the property of the Beloit Iron Works, curved around the south end of the machine shop of that company, passed over a tail race and then to the mainland, where it ended on the property now owned by the Thompson estate, lessor of the defendant *Thompson Plow & Engine Company.* During the last few years the former extensive business of the *Plow & Engine Company* has much decreased, the few shipments which it made being of less than carload lots and not in cars placed on this track.

The Beloit Iron Works increased its business substantially, found it necessary to extend its shops, and in doing so built an addition over the track in question, doors being placed on each side of the shop to allow passage of engines and cars.

The track was removed before 8 o'clock in the morning and the bridge before noon, the crew having begun work at 5:30 a. m. instead of the usual hour, 7:30 or 8 o'clock. The stated reasons for its taking up were the lack of necessity for further maintenance, the debilitated condition of the track and bridge, and the request of the Beloit Iron Works.

Informal complaint was made to the *Railroad Commission,* and on September 12th a hearing was had on an order to show cause why the track should not be restored. On September 26th the *Railroad Commission,* having found, in substance, that the spur track was a part of the *Chicago & Northwestern* system; that it should be operated for the benefit of shippers; that shippers were entitled to service thereon, and that in order that service may be rendered it would be necessary to restore the track, and that the removal was unjustified, ordered the track to be restored within twenty days.

The plaintiff companies sought a temporary injunction restraining the enforcement of this order on the ground that the only power possessed by the *Railroad Commission* to require construction and operation of spur tracks is that con-

ferred by sec. 1797—11*m*, Stats., and that the proceeding before the *Commission* in this instance was not had pursuant to the provisions of this statute, and that the order was not based upon or entered in compliance with the statute.

The *Railroad Commission* made its order on the theory that a railroad company, having constructed a spur track, may not, in the absence of some statutory provision covering the case, thereafter discontinue it.

The trial judge refused to grant the injunction on the ground that plaintiffs were not entitled to the assistance of a court of equity, since their acts in removing the track at an early hour and without giving notice were not in conformity with equitable conduct.

For the appellants there was a brief by *F. W. Sargent* and *R. N. Van Doren,* both of Chicago, attorneys for the *Chicago & Northwestern Railway Company,* and by *H. H. Field* and *J. N. Davis* of Chicago and *Sanborn, Blake & Aberg* of Madison, attorneys for the *Chicago, Milwaukee & St. Paul Railway Company;* and the cause was argued orally by *Mr. Van Doren* and by *Mr. John B. Sanborn* of Madison.

For the respondents there was a brief by the *Attorney General* and *Ralph M. Hoyt,* deputy attorney general, attorneys for the *Railroad Commission,* and oral argument by *Mr. Hoyt.*

The cause was also argued orally by *Mr. Alfred T. Rogers* of Madison, attorney for the *Thompson Plow & Engine Company.*

JONES, J.    Although the trial court filed no written decision, it is conceded that the order appealed from was based on the conclusion that plaintiffs did not come before the court with clean hands.   Our opinion will be confined to this question, and any other subjects will be discussed only so far as they seem to us to have a bearing upon it.

Counsel for plaintiffs evidently do not expect at this time a decision on the merits of the principal issue involved in this

action and the defendants expressly object to such a decision at this time.

The ground for claiming that plaintiffs' conduct was too inequitable to allow them to have relief in a court of equity is thus summed up in respondents' brief:

"For the express purpose of avoiding a. test of its legal rights in the circuit court for Rock county, it removed the track with the greatest haste and at an hour of the day when the persons interested in keeping the track in place would have no opportunity to know of the work or to enlist the aid of the court in time if they did learn of it; and the admitted object of this extraordinary proceeding was to aid the 'development' of one particular industry regardless of its effect upon another one."

Defendants' counsel have ably argued that under secs. 1797—2, 1797—3, 1797—9c, and 1797—12, Stats., the *Railroad Commission* had the jurisdiction to require service on the spur track in question and that this included the right to compel the plaintiffs to restore the tracks. In other words, it is the claim that since the passage of the railroad commission act railroads have no right to remove any spur tracks without the consent of the *Commission*.

Counsel for plaintiffs refer to several decisions of the *Railroad Commission* which they claim declare that the *Commission* has no jurisdiction to make an order requiring railroad companies to continue to maintain spur tracks built at their own expense or to compel their restoration when taken up. In the case of *Doyle v. M., St. P. & S. S. M. R. Co.* the *Commission* said:

"In the present case the *Commission* is without jurisdiction to order the restoration of the sidetrack as prayed for. The track was installed before the passage of the railroad commission law and was not paid for in full by the owners of the industry to which it was originally built, nor in part by the petitioner or her predecessors. Its removal is, therefore, not subject to the conditions imposed by sec. 1802 of the Statutes, which provides for the building of spur tracks at

the expense of the industry desiring them and for the re-
moval only upon due notice and for good cause shown. If
the petitioner desires to have a new spur track constructed
to serve her potato warehouse and is willing to bear the cost
of building the same, the petition should be filed with the
*Commission* under sec. 1797—11*m* of the Statutes. In such
a proceeding the *Commission* is empowered to order the con-
struction of such a sidetrack if the location of the warehouse
is within three miles of the company's line, if the connection
is necessary for the warehouse or industry in question and
if it is not unreasonably dangerous to public travel." 13
Wis. R. R. Comm. Rep. 620, 622.

Appellants' counsel also cite *Osceola M. & E. Co. v. M.,
St. P. & S. S. M. R. Co.* 15 Wis. R. R. Comm. Rep. 416, in
which the *Commission* again held that it was without power
to compel the railroad company to construct a spur or side-
track, which had been removed, to a warehouse. There are
two earlier cases from which it might be inferred that at one
time the *Commission* had entertained a different view. *Rib
River L. Co. v. Upham Mfg. Co.* 1 Wis. R. R. Comm. Rep.
739; *Hickerson R. M. Co. v. N. P. R. Co.* 4 Wis. R. R.
Comm. Rep. 395.

Counsel for plaintiffs strongly rely on *Bartlett v. C. & N.
W. R. Co.* 96 Wis. 335, 71 N. W. 598, decided in 1897. In
that case it did not appear who had built the spur track which
had been removed by the railroad company, but the shipper
had expended money in its maintenance and repair. In
construing sec. 1802, which provided that owners of ware-
houses, elevators, and mills might at their own expense con-
struct and maintain sidetracks and connect with railroads,
in a decision by Mr. Justice Newman, it was held that there
was no duty on the part of the railroads to continue them,
and that when the spur track was constructed by the com-
pany it had the right to remove it. Since that decision the
statute has been so amended that when the spur is built by
the owner, six months' notice of removal by the company
must be given.

Sec. 1831*a*, enacted in 1883, makes provision for building spur tracks by railroad companies, and gives them power to condemn land for that purpose, but contains no provision or restriction as to their removal or abandonment. Sec. 1797—11*m*, enacted in 1907, gives to the *Railroad Commission* the power to require the construction of spur tracks by railroad companies under proper conditions and at the expense of shippers, and makes elaborate provision for securing such payment to the railroads. None of these three specific statutes relating to spur tracks in terms requires the railroads to continue to maintain spur tracks built at their own expense. It is urged, however, by counsel for defendants that the general terms of the railroad commission act, already mentioned, requiring every railroad to furnish adequate service and giving the *Commission* power to compel it, are broad enough to vest in the *Commission* the power to compel such continued maintenance whether the spur is built at the expense of the railroad or not.

In the case at bar the time came when the railroad company concluded that the small amount of business in carload lots furnished by defendants did not justify the expense of continuing the spur and incurring the considerable expense necessary to repair and keep it in a safe condition. They were no doubt influenced in part by the fact that such continuance would be a serious inconvenience to another shipper, not a competitor, through whose land the track passed.

It is the claim of the plaintiffs' counsel that, according to the decisions of the *Railroad Commission* and this court, the *Commission* had no jurisdiction to compel the maintenance of the spur or to compel its restoration; that according to these decisions they had the absolute right to remove the spur without notice to any one whatever; that they were not bound to anticipate that the rulings of the *Commission* or this court would be changed; and therefore it should not have been assumed by the trial court that they acted fraudulently or unconscionably.

It is one of the ancient maxims of equity jurisprudence that he who comes into equity must come with clean hands. The principle was acted upon in the high court of chancery in England at least as early as 1682, nearly 240 years ago. *Mildmay v. Mildmay*, 1 Vernon, 52. Sometimes the maxim has taken this form: "He that hath committed iniquity shall not have equity." Francis, Maxims of Equity, 7.

The rule has been thus recognized for centuries that a court of equity will not interfere on behalf of a plaintiff whose own conduct in connection with the same matter in litigation has been fraudulent, dishonest, unconscionable, or in bad faith. It is a wholesome rule, the value of which we fully recognize, and the force of which should not be relaxed. We find its most common application in actions for specific performance where the plaintiff has practiced fraud in securing the agreement; or in other cases where the relief, sought by the plaintiff is inseparably connected with his own prior fraud; or in cases where an illegal contract has been made and one of the parties to it seeks its enforcement. Although its application is not confined to these classes of cases, if the words "clean hands" were given their popular meaning few corporations of long life could find relief in equity, and many, perhaps most, individual suitors would also find the door closed.

The maxim under discussion is not without its limitations, and is not to be applied arbitrarily or contrary to settled rules of equity jurisprudence. When plaintiffs removed the spur no litigation or proceeding relating to the subject was pending. They removed their own property in a peaceful manner, claiming they had the perfect legal right to do so, and basing their claim on decisions of the *Railroad Commission* and this court. If the companies had the absolute legal right to take up the spur, no one would claim that to do so at any hour of the day was fraudulent or unconscionable conduct. We think the same would be true if in good faith they believed that they had such right. We are reinforced

in this view by the fact that for hundreds of years parties have thus often taken control of property they deemed their own, though expecting some objection might be made, and nevertheless no case has been cited and we have found none where the clean-hands doctrine has been applied to deny them equitable relief. Defendants' counsel urge that the expeditious haste with which plaintiffs removed the track shows that they had not confidence in their claim of right. This does not necessarily follow. Parties may have confidence in such claims of right and yet take peaceable and legal action to avoid litigation, annoyance, or delay.

It is also urged that bad motives are to be inferred from the fact that one of the reasons for the removal of the track was the accommodation of the Beloit Iron Works. If, as they claim, plaintiffs were acting strictly within their rights, the reasons for their conduct become quite immaterial. A somewhat similar argument was used in the case of *Chippewa B. Co. v. Durand,* 122 Wis. 85, 99 N. W. 603, and was overruled.

Although there are innumerable cases denying suitors relief in equity because of their fraudulent or unconscionable conduct, they seem to be, so far as we have found, almost without exception, cases where the relief was denied on the final hearing and not on preliminary motions.

The order appealed from is a preliminary order denying a temporary injunction which sought to preserve the *status quo* until final hearing. The rule which has come to prevail in this state is well stated in *De Pauw v. Oxley,* 122 Wis. 656, at p. 659 (100 N. W. 1028), as follows:

"Where the complaint states a cause of action and the motion papers disclose a reasonable probability of the plaintiff's ultimate success, it is well nigh an imperative duty of the court to preserve the *status quo* by temporary injunction, if its disturbance *pendente lite* will render futile in considerable degree the judgment sought, or cause serious and irreparable injury to one party; especially if injury to the other is slight, or of character easily compensable in money; and that the

discretion vested in the court is largely over the question of terms of the restraint and the protection of rights by bonds from one party to the other."

It was estimated that the cost of repairing the track and bridge would range from $2,300 to $2,400. If the track were restored and if it should finally be determined that plaintiffs were within their rights, much of this expense would be wasted. One of the reasons for removing the track was its debilitated condition. If the order of the *Commis-sion* were complied with, new material would be necessary, and this reason for removal would be nullified as an issue in the case.

The testimony shows that the damage of the *Plow Company*, if the *status quo* were preserved until the trial, would be slight and would be covered by such bond or undertaking as would be required by the court.

It seems probable that the trial court would have granted the temporary injunction except for the reason we have discussed. We do not concur in the view of the court that plaintiffs should be denied relief on the ground on which the decision was based. Since the denial of the temporary injunction during the pendency of the litigation would cause irreparable injury to plaintiffs and no damage to defendants, we consider that the *status quo* should be preserved until the trial. The question whether under existing statutes railroads may remove spur tracks built at their own expense without applying to the *Railroad Commission* is one of great importance both to the railroads and to the public and should be determined on its merits free from extraneous circumstances. On that subject we express no opinion, and nothing in this decision is to be construed as indicating any views we may entertain respecting it.

*By the Court.*—The order appealed from is reversed, and the cause is remanded with direction to grant the temporary injunction.

On January 10, 1922, the following opinion was filed:

PER CURIAM. It is ordered that the mandate in this action be amended in such manner as to read as follows:

*By the Court.*—The order appealed from is reversed, and the cause is remanded with directions to grant the temporary injunction, and it is ordered that costs be taxed in favor of plaintiffs in this court against the *Thompson Plow & Engine Company.*