OVERMAN CUSHION TIRE CO., Inc., v.
GOODYEAR TIRE & RUBBER
CO., Inc.

No. 228.

Circuit Court of Appeals, Second Circuit.
April 7, 1930.

Drury W. Cooper and E. D. Given, both of New York City, for appellant.

Archibald Cox and Robert W. Byerly, both of New York City, for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Since no appeal was taken by the plaintiff, we shall disregard reissue No. 13,626 and the claims of 1,092,078 which were not adjudicated. This patent, as granted March 31, 1914, was for an improvement in cushion tires designed for use on vehicles. It contained twelve claims. Of these only claims 6 and 10 were adjudicated. They were held valid and infringed, and read as follows:

"6. A new article of manufacture, a cushion tire which is hollow by means of a longitudinal opening having a V-shaped transverse section whose base is at the flange-engaged portion of the tire and whose apex extends toward the tread well below said flange-engaged portion, said tire having thick upright side walls at the sides of said opening and a deep nose portion extending across the apex of said opening and across the lower ends of said walls, said nose portion having a bottom with a wide ground-contact delivering the vertical thrusts from the tread well under said side walls."

"10. A new article of manufacture, a cushion tire which is hollow by means of a longitudinal opening having a V-shaped transverse section whose base is at the flange-engaged portion of the tire and whose apex extends toward the tread well below said flange-engaged portion, said tire having thick upright side walls at the sides of said opening and a deep nose portion extending across the apex of said opening and across the lower ends of said walls, said nose portion having a bottom with a wide ground-contact delivering the vertical thrusts from the tread well under said side walls, said tire having its outer sides below its flange-engaged portion and adjacent the longitudinal opening steeply converging toward the tread in substantially straight lines."

In the development of solid rubber tires for use on automobiles, it became necessary to provide some means for accommodating the displacement of the rubber due to the weight of the load and the side and vertical thrusts encountered by the tire in operation. It had long since been discovered that a solid rubber construction permitted the inevitable displacement only in outward bulging at the sides above the flange-engaged portion. Within the flange-held area there was no movement or change in the rubber because it cannot be compressed and the rim and flanges kept that part of the tire rigid. The rounding outward at the sides caused premature deterioration both from excessive road wear and from damage where the rubber was forced against or over the tops of the flanges. To overcome these defects, various expedients had been tried before this patent. They consisted in general in decreasing the height of the flanges, in vulcanizing the tire to the rim, in changing the outside shape, especially at the sides, and in leaving an air

core inside the tire to afford a space for taking up the rubber displaced instead of having it all pushed out at the outer edges. None of these things were new or claimed to be new by the patentee.

The quoted claims of the patent cover nothing unique except the relation of the thick upright side walls to each other and to the nose portion and rim so that the force applied to the nose portion both by reaction of the road to the weight on the tire and by the side thrusts encountered by the tire in motion under the usual conditions of use were transmitted through these upright walls in practically straight lines throughout the whole of the walls. In this way excessive bending, creasing, and the consequent heating and devulcanization of the rubber was eliminated. Therein lies the real value of the Overman patent. He brought about the result by forming an inside longitudinal air space in the shape of an isosceles triangle with its base considered as in a plane with the top of the flanges whatever their height and its apex embedded in the thick nose portion of the tire. For reasons more apparent after demonstration than before, the construction which gives this shape of inner opening, at least when used with a deep nose portion and thick side walls, especially when the outside of these side walls are practically straight lines converging toward the nose, brings about the desired result. Such a combination as this better does away with the creasing, heating, and damage those skilled in the art had been trying to avoid, than had before been accomplished. The inside space, while not itself the novel thing for that space is for rubber flow, was a well-known feature, and will accomplish that result if there in any adequate size, is in shape and position the resultant of so constructing the side walls that they will take the thrusts from the nose in such a way "that vertical thrusts from the tread are delivered well under the side walls." This is how prematurely destructive creasing of the side walls is done away with. Such a construction leaves an opening of the triangular shape described, and the position and shape of this opening furnishes a visual means for a comparative checking of the defendant's tires claimed to infringe the patent. For if a cushion tire has this triangular air space with its base in a plane with the tops of the flanges, wherever those tops may be, it must receive the vertical thrusts well under the inside portion of the side walls; and, if the walls are made so that these thrusts are received well under the entire inside portion of the side walls, the air space

will necessarily assume this triangular shape. This construction is withdrawn from public use by claims 6 and 10. Claim 10 is more definite than 6 regarding the outside portion of the side walls by confining itself to a "tire having its outer sides below its flange-engaged portion and adjacent the longitudinal opening steeply converging toward the tread in substantially straight lines." That does for the outside of the tire what the straight side inside wall does for that portion, and puts all of the vertical thrusts well under all of the side wall. In practice it does even more than that, as was demonstrated by subjecting some of the exhibits to vertical and side thrusts simultaneously. Rubber placed in such form develops the faculty of taking the force of side thrusts, within reasonable limits, in practically the same straight lines in which it receives the vertical thrusts, and so the tire is given comparatively great durability by making negligible the bending, creasing, and resultant heating and devulcanization from this source. When these things are fully appreciated, it at once becomes apparent that a valuable contribution to the cushion tire industry is contained in this patent.

It is claimed that this side wall construction was disclosed in the prior art, and, to be sure, in patent No. 436,993, September 23, 1890, granted to A. H. Overman, this patentee's father, an inside triangular opening in a bicycle tire is shown. Nothing is claimed for it but "a pointed arch, the apex whereof extends above the radial center of the tire, so that the tire is made more elastic at the center of its bearing-face than near the edges thereof. * * *" There was no disclosure of the gist of the patent in suit which aimed at taking the thrusts well under the side walls, and, if patent No. 436,993 could and did accomplish such a result in respect to the inside portion of the side walls, it could not do the like for the entire side wall, and such was neither its object or known result. The claim was only for a pointed arch "with an apex" above "the radial center of the tire," and, while these specifications referred to a picture having an interior opening in the form of a triangle, the virtue now known to be inherent in straight side construction as used in the patent sued upon was nowhere exposed. Indeed, this seems well enough established by an inspection of A. H. Overman's patent, No. 436,993, and it is somewhat corroborated by the fact that, in a period well known to have witnessed intensive development of the rubber tire due to the fast growing use of the automobile, all

other cushion tires, before the plaintiff's, were constructed with a round or rounding arch interior opening without utilizing the value of the straight strut principle. The English patent No. 15,710 to Smith July 12, 1906, the German patent No. 216,820 to Continental Caoutchouc & Gutta Percha Compagnie March 11, 1908, and the Ducasble patents, No. 596,488, January 4, 1898, No. 639,156, December 19, 1899, No. 33,302, October 2, 1900, and No. 33,338, October 9, 1900, all have rounded top openings and do not use the essential straight strut. Nor does Carr, No. 582,453, May 11, 1897, show more than a heart-shaped opening which may be more or less pointed. The vital principle embodied in the plaintiff's patent which gave its tires such freedom from devulcanization takes in both the shape and position of this interior opening, and eluded all the others. We are constrained to hold that the two claims have not been anticipated by anything affecting the inside portion of the side walls.

■ But it is also urged that, because the construction of the patent permits some outward bulging, though not to an injurious extent, and the prior art, as the appellant now claims the patentee himself disclosed in his application, shows outward bulging, and because the patentee amended, during the pendency of his application in the Patent Office, claims tied to the "predominating tendency of the displaced material to fill into the tire opening instead of to bulge out at the sides of the tire," and canceled a sheet of drawings showing outward bulging now claimed by the defendant to disclose what was then old, he voluntarily gave up any tendency toward outward bulging at all. The plain answer to this is that these drawings were not filed to, or did, disclose what was old in the art, but were for reference to explain a previous application by the same inventor on which no patent issued. This sort of disclosure did not form a part of the prior art, and the claims in the patent sued on need not show a patentable improvement over them. Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co. (C. C. A.) 22 F.(2d) 259, 260. And, further, the application for the patent in suit makes no pretense of the elimination of outward bulging, but covers the previous applications in this respect with no limitation except that it may not be "to an injurious extent."

Accordingly, we conclude that claims 6 and 10 are valid and withdraw from use by others the converging, practically straight side, strut principle embodied therein with one end of each strut envisioned as resting for its base on the material in a line with the tops of the flanges and the other end embedded in the deep nose portion.

The defendant's tires which are claimed to infringe are the pneumatic cushion tire brought out in 1923, and the superpneumatic cushion tire of 1927. Previously the defendant had made and sold cushion tires including its SK tire without meeting with any claim of infringement. The SK was made in 1917. It does not infringe, though it has an interior space left in a pointed slightly oval form by the shape of the side wall, because these walls have such inside curves above the widest point of the cavity and below the flange-engaged portion that the part of the opening which may fairly be considered V-shaped has its base in a plane well below the flange-engaged portion of the tire instead of at that place as in the patent. This particular location of the base is absolutely essential to side wall construction to obtain the durability of the tire of the patent as well as to read on the patent claims. In the 1923 tire the defendant used a side wall construction which gave nearly straight converging outside walls, with the inside of the walls conforming generally to the shape of the SK tire, but with one important and infringing change. The relative position of the cavity was altered to place the base of the rather oval sided triangular portion in a plane with the tops of the flanges. The tire of 1927 came out with the outside walls still straighter and the cavity longer, narrower, less oval in form. Its side wall construction placed the base of what may well be called the triangular portion of it right in a plane with the flange tops. In this way the defendant took the valuable structure of the patent and added to its tire so made the durability that follows freedom from creasing with its attendant heating and devulcanization. This studied attempt over a period of years to approach gradually closer to the identical structure of the patent furnishes such evidence of the patent's advance over the prior art and of its intrinsic value as imitation by the skillful usually affords. The differences to be found between these two last tires of the defendant and the tire of the patent meet the eye, but do not meet the claim of infringement. A slight curve in place of a straight line no more avoids infringement of this patent than did the use of an eight-sided car instead of a round one in Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; or having the straight line generatrices in a spiral casing as called for in the patent bent or

curved a little in the defendant's product as in Allis-Chalmers Manufacturing Co. v. Columbus Electric & Power Co. (C. C. A.) 19 F.(2d) 860, 864. Here, as in the two cases mentioned, the essence of the patent has been appropriated.

While the plaintiff prevailed in the District Court only on two claims and failed entirely to establish the validity of the reissued letters patent, full costs were allowed to it. The patents were so related that the action was presumably tried with little or no additional expense because the reissue was involved. There was an insufficient showing by the appellant to warrant any interference with the discretion of the trial court in awarding full costs. Michigan Carton Co. v. Sutherland Paper Co. et al. (C. C. A.) 29 F.(2d) 179, 184; Dubois v. Kirk, 158 U. S. 58, 66, 67, 15 S. Ct. 729, 39 L. Ed. 895.

Decree affirmed.