CITIZENS NATIONAL BANK V. ROSE POLSKI, APPELLEE: CLARENCE G. BLISS, RECEIVER, APPELLANT.

FILED MARCH 2, 1932.   No. 28126.

*Lamont L. Stephens* and *F. C. Radke*, for appellant.

*George I. Craven, contra.*

Heard before GOSS, C. J., DEAN and PAINE, JJ., and BROADY and RHOADES, District Judges.

GOSS, C. J.

The Citizens National Bank filed its petition in equity in August, 1930, interpleading Rose Polski as one claiming the proceeds of a four months' time certificate of deposit in plaintiff bank, dated April 1, 1930, for $3,750, bearing 4 per cent. interest, and Clarence G. Bliss, Receiver of Bank of Ashton, as another party claiming such proceeds. Plaintiff asked to be permitted to deposit the principal and interest thereon for four months with the

clerk of the court, that said claimants be required to litigate their respective claims, and that plaintiff be discharged upon paying such principal and interest. Issues were joined and trial was had. On August 5, 1931, the court entered a decree finding generally in favor of Mrs. Polski and awarding her the proceeds of the certificate. The receiver appealed.

Bank of Ashton had long been a state bank owned and operated by the Polski family. For some years Stephen S. Polski had been president and managing officer. On November 24, 1929, he died. The bank was closed the next day with heavy liabilities. The evidence suggests misapplication of funds of the bank and of bonds left with the bank for safe-keeping. Polski left considerable insurance, part of which was payable to the bank and part to his wife, Rose Polski. She deposited $3,750 in the plaintiff bank and received the certificate of deposit therefor. On June 7, 1930, she indorsed the certificate at her home and it was turned in to the receiver through his assistant, who was present when it was indorsed by Mrs. Polski. At the time she indorsed the certificate it was agreed between the assistant receiver and her that the department of trade and commerce and the receiver would stay prosecution of the officers of the bank or would return the certificate. The assistant to the receiver gave her a written memorandum to that effect. It is in evidence. Mrs. Polski naturally wanted to lighten the obloquy on the family name of her husband and to protect her brothers-in-law, George L. Polski, a director and vice-president of the bank, and Ignac M. Polski, cashier of the bank, who had not only civil liability to the bank but who had reason to fear criminal prosecution. George L. Polski and C. E. Brown, assistant to the receiver, went to the home of Rose Polski on June 7, 1930, on a joint venture. They knew Mrs. Polski had funds. Polski wished to borrow from her and Brown desired him to do so in order that George might pay the bank. They had virtually an all-day session. Mrs. Polski called in her brother-

in-law, Garrett H. Lorenz; as her adviser. Ultimately, on that day, she turned over to George L. Polski, among other securities totaling $9,950, the certificate of deposit, indorsing her name on the back of it. It was understood he would turn it over to the receiver; which he did soon thereafter by delivering it to Brown, assistant to the receiver. Brown duly indorsed it to Bliss, receiver, who is here claiming the proceeds. Brown signed in ink and delivered to Rose Polski a statement in these words: "If in any case the dept. of trade and commerce or the receiver of the Bank of Ashton should not see fit to accept moneys tendered by Rose Polski to stay prosecution of the officers of the Bank of Ashton, that such certificate of deposit or moneys shall be returned to her. (Signed) C. E. Brown, Asst to Receiver of Bank of Ashton." It is evident the threat of prosecution was the potent influence in obtaining from Mrs. Polski this certificate as the fruit of the day's work.

Mrs. Polski received from George on June 7, 1930, his two notes—one for $4,666 (signed also by L. B. Polski) due June 7, 1935, and one for $5,000, due June 7, 1940. George gave her a memorandum listing the securities, totaling $9,950, and the notes, and showing the balance due Rose Polski to be $284. During the trial Mrs. Polski tendered in court the notes and offered to surrender them to the receiver or to the makers. The receiver declined the tender.

Among other things, Rose Polski had pleaded duress on the part of Brown in procuring her to indorse and deliver the certificate. By its decree the court found generally in favor of Rose Polski on all the issues, "save and except that the court fails to find that any duress was exercised or used in obtaining the transfer of the certificate," etc.; found that the consideration was the agreement not to prosecute, and that such an agreement is illegal and void, but that she "was an ignorant woman and not acquainted with the provisions of law relative to compounding a felony," was constrained by over-persuasion of Brown and

George L. Polski, and was not equally guilty with Brown. Therefore, the court declared her indorsement and delivery of the certificate void and decreed payment of the proceeds to her.

In *Johnson v. Owen*, 72 Neb. 477, it appears that Charles Owen was complained of on the charge of rape. He left the state, but his father, Frank Owen, indorsed and delivered a $300 certificate of deposit to the county attorney on condition that the prosecution would be dismissed. The county attorney indorsed and delivered the certificate to the county judge. Charles Owen replevied it. The judgment in favor of Charles Owen was reversed, the court holding: "Where a plaintiff claims that a certificate of deposit in the sum of $300 was indorsed and delivered for him to a county attorney under an agreement that, in consideration thereof, he would dismiss a criminal prosecution against plaintiff and release him from jail, a court will not aid him to regain possession of the property. Such a contract or agreement is illegal, against good morals and public policy, and the court will leave the parties in the same position in which it finds them." Trending the same way but on facts not so similar are *Brower v. Fass*, 60 Neb. 590; *Davis v. Hinman*, 73 Neb. 850; *Perry v. Berger*, 85 Neb. 753; *Clarke v. Omaha & S. W. R. Co.*, 5 Neb. 314. This may be said to be the general rule. We note that *Johnson v. Owen, supra,* was an action at law and not in equity, that the opinion rejected Owen's argument that the certificate of deposit was obtained by duress; and we do not know what happened to the certificate after the mandate went down to the district court.

The finding of the district court that Rose Polski was not equally guilty with Brown and the order granting her relief, notwithstanding she was *in pari delicto*, finds support in the continuation of jurisdiction by equity until the matter is entirely disposed of. *Weaverling v. McLennan*, 116 Neb. 466. In that case we held:

"The equitable principle expressed in the maxim, 'He

who comes into equity must come with clean hands,' being founded on public policy, public policy may require its relaxation or limitation. Even when the parties have been found to be *in pari delicto*, relief has at times been awarded on the ground that in the particular case public policy has been deemed to be best conserved by that course.

"Where equity has assumed to act, it must do complete justice, regardless of whether litigants originally came into court with unclean hands."

The case just cited did not reverse or abate the general legal principle stated in *Johnson v. Owen, supra.*

In the case at bar, which is here for trial *de novo,* the district court failed to find that duress was exercised in obtaining the transfer of the certificate from Mrs. Polski and grounded the judgment upon a finding that she was consciously ignorant of the legal effect of her act and that the assistant to the receiver overpersuaded her and induced her to enter into the illegal agreement; that, therefore, though *in pari delicto* (in a like offense), she was not of equal guilt with him and could recover. However, we think the evidence justifies a finding that her consent to indorse the certificate was the result of duress. She might well be called, without using the term in any offensive sense, an ignorant woman. Her intellectual disparity with Brown was very evident. Her state of health, her pride in the family name, her public shame and mortification that would result if her husband's brothers were prosecuted, the circumstances in which Brown and George L. Polski dealt with her for several hours to consummate the results, even though Lorenz was there to aid her, indicate that her will was overborne and she loaned George nearly $10,000 without security where previously she had resisted alone his importunities to borrow $4,000. As the triers of the facts, we conclude that, in all the circumstances, the action of Brown, the agent and representative of a branch of a coordinate department of the state, under the modern doctrine amounted to duress in procuring her

consent to an illegal agreement. 9 R. C. L. 715, sec. 7.

It follows that the judgment of the district court was right in canceling her indorsement of the certificate and in awarding her the proceeds thereof, for which judgment against plaintiff was directed. The judgment and decree is therefore

AFFIRMED.