## GOODYEAR TIRE & RUBBER CO. v. OVERMAN CUSHION TIRE CO.
### No. 7581.

Circuit Court of Appeals, Sixth Circuit.
Sept. 1, 1937.

Supplemental Opinion April 13, 1938.

980

Arthur C. Denison, F. O. Richey, and Newton D. Baker, all of Cleveland, Ohio (B. D. Watts, Baker, Hostetler, Sidlo & Patterson, and Richey & Watts, all of Cleveland, Ohio, on the brief), for appellant.

Floyd C. Williams, of Cincinnati, Ohio, and Robert W. Byerly, of New York City (John Weld Peck, of Cincinnati, Ohio, and Robert W. Byerly, of New York City, on the brief), for appellees.

Before SIMONS, MACK, and ALLEN, Circuit Judges.

MACK, Circuit Judge.

This is an appeal from a final decree for plaintiff in a suit for patent infringement. In addition to errors assigned as to the amount awarded for the infringement, appellant contends that the bill should have been dismissed on the unclean hands principle.

A history of the litigation between the parties will be helpful. In a suit against defendant's New York sales subsidiary, validity and infringement of the patent were determined in plaintiff's favor. 2 Cir., 1930, 40 F.2d 460. On the accounting in that proceeding, plaintiff was defeated in an attempt to make the present defendant a codefendant of its wholly owned subsidiary. S.D.N.Y., 1930, 48 F.2d 213, affirmed, 2 Cir., 1931, 48 F.2d 215, certiorari denied 1932, 285 U.S. 545, 52 S.Ct. 395, 76 L.Ed. 937. Thereupon, plaintiff brought the present suit and was successful both in the District Court and in this court in its claim that the New York case was res adjudicata as to the issues of validity and infringement because of privity between the respective defendants. 6 Cir., 1933, 66 F.2d 81, certiorari denied 1933, 290 U.S. 681, 54 S.Ct. 121, 78 L.Ed. 587. The New York case proceeded to a final decree on an accounting in which plaintiff was awarded as damages a reasonable royalty on the tires sold by the defendant therein, and punitive damages were measured by doubling the award. 2 Cir., 1933, 66 F.2d 361, certiorari denied 1933, 290 U.S. 681, 54 S.Ct. 119, 78 L.Ed. 587. In the present case, plaintiff seeks to recover (1) defendant's profits on the tires manufactured by defendant and sold to its New York subsidiary, for which reasonable royalty was awarded and paid in the New York case; (2) damages and profits on all other tires manufactured and sold by defendant. The District Court, confirming the master's report on the accounting, overruled the defense of unclean hands and decreed the payment of profits on sales to the New York subsidiary and reasonable royalty on the other sales, doubling the latter award by way of punitive damages.

■ 1. *Unclean hands.* On the master's holding that the question was not covered in the order of reference for the accounting, defendant obtained leave of this court to file in the District Court its motion to dismiss the bill on the ground of unclean hands, and the District Court, pursuant thereto, ordered a second reference to the master to include the matters raised by the motion. To support this defense, defendant relies on a contract made by plaintiff and Nelson, one of its employees, in which plaintiff promised Nelson a percentage of what would be recovered in the litigation here and in New York in return for his regular services and also his services and testimony in the cases. The contention is based on the alleged illegality of a contract to give testimony for a compensation dependent upon the outcome of the case.

Plaintiff's patent is for a cushion rubber truck tire having a triangular shaped hollow center. The invention consists in the shape and location of the opening, which, by avoiding excessive folds and creases in the tire under operating conditions, causes it to last longer than other cushion rubber tires with different openings. In order to demonstrate to the New York court the utility of the invention, there were presented as exhibits cross-sec-

tions of plaintiff's, defendant's, and the prior art tires. These were subjected to certain vertical and side loads simulating actual operating conditions. Nelson, as assistant in plaintiff's factory, and later as manager, took part in the preparation of test exhibits for the New York case and had charge of the preparation of test sections for use on the infringement issue in January, 1932, in the instant suit. For this trial, defendant also had made tests in its Akron, Ohio, plant, with Nelson present as plaintiff's sole representative. In the period immediately preceding the hearing in this suit, plaintiff was insolvent except for its infringement claims; expenses were being continually cut down; salaries were reduced; and a number of employees were discharged. Nelson, feeling his position insecure in this state of affairs, and believing his testimony essential in the Ohio case because of his having been a key man in the preparation therefor, decided to demand an employment contract before the trial. He went first to plaintiff's counsel, Mr. Byerly, who refused his request to draw up a contract and who tried to dissuade him from his purpose. A contract, drawn up by another attorney, was then left by Nelson on the desk of C. M. Overman, plaintiff's president, on January 2, 1932. A day or two later, Nelson handed in his resignation, stating that it was to take effect unless Overman signed the contract. The contract recited that Nelson's salary had been suspended with his consent during 1931 and that the officers of the company had indicated that a bonus would be paid its employees upon the favorable outcome of the litigation against the Goodyear companies. It provided for the continuation of Nelson's employment as factory manager for a period of one year ending April 13, 1933, at a stated salary, that Nelson should "render such services as he may be called upon to render in connection with the above mentioned litigation," and that the company would pay him 2 per cent. of the gross receipts of the litigation on its termination, but not less than $10,-000. Overman consulted the company's attorney, Mr. Tannenbaum. In reply to their inquiry as to whether Nelson would be needed at the Ohio trial, Mr. Byerly replied that it was imperative to have Nelson there because he was plaintiff's only representative who had witnessed defendant's tests and because he had conducted tests as to which it was planned to have him testify. In these circumstances, Overman felt forced to sign the contract. Plaintiff did not, in fact, need Nelson at the trial, as it relied on cross-examination of defendant's witnesses; Nelson gave only relatively unimportant testimony and that as to other matters to which others could as well have testified. He did later testify as to the tests, in the New York accounting. After the recovery in the New York case, Nelson sued plaintiff on the contract in New Jersey; a defense that it had not been authorized by the board of directors was sustained.

Defendant relies most strongly on Keystone Driller Co. v. General Excavator Co., 1933, 290 U.S. 240, 54 S.Ct. 146, 147, 78 L.Ed. 293; it affirmed this court (1932, 62 F.2d 48) in dismissing a patent suit on the ground of unclean hands. Both the master and the District Court held that case distinguishable. The plaintiff therein, assignee of a patent, had obtained an interlocutory decree in the District Court in an earlier infringement suit against one Byers. Byers Mach. Co. v. Keystone Driller Co., D.C.,N.D.Ohio, 1932, 4 F.Supp. 159. While contemplating bringing the Byers suit, it had learned of certain activities of one Clutter, which might be found to be a prior use rather than merely experimental, and if so, would invalidate the patent. The patentee, in plaintiff's interest, paid Clutter for an affidavit that his was an abandoned experiment and for his promise to suppress the evidence thereof. Nothing as to the Clutter matter appeared in the Byers Case. The decree therein was relied upon in the application for an injunction in the suit against General Excavator Company. That defendant was compelled to give a bond to avert the granting of a temporary injunction. The facts as to the Clutter contract were then discovered and presented. The decision of the District Court refusing to dismiss the bill on this showing was reversed on appeal; this court held it immaterial that the evidence was not in fact suppressed, or that the prior use actually was, as it was later determined to be, an abandoned experiment.

It is clear from the opinions, both of this court and of the Supreme Court in the Keystone Case, that the ground of dismissal because of unclean hands was the "unconscionable" and "reprehensible" conduct in making the Clutter contract. The authorities cited and quoted are all to the

same effect. Thus, it is said the bill will be dismissed where plaintiff has "violated conscience, or good faith, or other equitable principle, in his prior conduct," or where his conduct has been "unconscientious, or unjust, or marked by a want of good faith, or (has) violated any of the principles of equity and righteous dealing which it is the purpose of the jurisdiction to sustain." 1 Pomeroy, Equity Jurisprudence, 4th Ed., 1918, §§ 397, 398, 399. Terms like "willful misconduct," "morally reprehensible," "bad faith," "fraud," "trickery," "deception," are referred to in discussions of the maxim. 1 Story, Equity Jurisprudence, 14th Ed., 1918, §§ 98, 99, 100. "Under this maxim, any wilful act in regard to the matter in litigation which would be condemned and pronounced wrongful by honest and fair-minded men, will be sufficient to make the hands of the applicant unclean." Id. § 99. "A court of equity acts only when and as conscience commands; and, if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses, and whatever use he may make of them in a court of law, he will be held remediless in a court of equity." Deweese v. Reinhard, 1897, 165 U.S. 386, 390, 17 S.Ct. 340, 341, 41 L.Ed. 757.

In Paris Medicine Co. v. Brewer & Co., D.C.Mass., 1936, 17 F.Supp. 7, 13, Judge Brewster declined to dismiss the suit of one whose conduct had been wrongful, but, as it was held, not unconscionable. In support of his interpretation of the Keystone Case that the wrongdoing must be unconscionable, he quoted therefrom as follows: "But courts of equity do not make the quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication. Story, Id., § 100. Pomeroy, Id., § 399. They apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice. They are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion."

We are in agreement with the lower court that the Keystone Case is not applicable here, because Overman had no corrupt intent in making the Nelson contract. He intended by the contract only to continue Nelson's employment, which included work on the cases. There was no thought of suppressing evidence or of inducing the witness to testify falsely. Under duress, Overman yielded to Nelson's demand, just before the time when it was believed, though erroneously, that as a witness testifying only to the truth, he was essential to the establishment of plaintiff's case.

■ Defendant's contention that corrupt intent is immaterial cannot be sustained in the light not only of the Keystone opinion and the cases therein cited, but of a host of other decisions. Bentley v. Tibbols, 2 Cir., 1915, 223 F. 247; Weeghan v. Killifer, 6 Cir., 1914, 215 F. 289, L.R.A.1915A, 820; Rubyette Co. v. Vineland Products Co., D.C.N.J.,1931, 48 F.2d 288; Manhattan Medicine Co. v. Wood, 1883, 108 U. S. 218, 2 S.Ct. 436, 27 L.Ed. 706; Chicago & N. W. R. Co. v. R. R. Comm., 1922, 175 Wis. 534, 185 N.W. 632; Comstock v. Thompson, 1926, 286 Pa. 457, 133 A. 638, 640; Green v. Veder, Tenn.Ch.App.,1900, 57 S.W. 519. But see Danciger v. Stone, C.C.E.D.Okl.1909, 187 F. 853, in which the plaintiffs had violated a criminal statute without knowing that their act was unlawful.

■ The general rule unquestionably is that a contract to give testimony for a compensation contingent on the outcome of the case is illegal. Dawkins v. Gill, 1846, 10 Ala. 206; Sherman v. Burton, 1911, 165 Mich. 293, 130 N.W. 667, 33 L. R.A.,N.S., 87; In re Certain Lands, 1911, 144 App.Div. 107, 128 N.Y.S. 999, affirmed In re City of New York, 1912, 204 N.Y. 625, 97 N.E. 1103; In re Schapiro, 1911, 144 App.Div. 1, 128 N.Y.S. 852. The master, holding the general rule inapplicable because Nelson had "a known interest in the controversy," in that he was a director of plaintiff and was presented to the court as an employee, relied on Wellington v. Kelly, 1881, 84 N.Y. 543, and Thatcher v. Darr, 1921, 27 Wyo. 452, 199 P. 938, 16 A.L.R. 1442. Cf. Gaines v. Molen, C.C.E. D.Ark., 1887, 30 F. 27; Smith v. Hartsell, 1908, 150 N.C. 71, 63 S.E. 172, 22 L.R.A.,N.

S., 203; Perry v. Dicken, 1884, 105 Pa. 83, 51 Am.Rep. 181. But see Cowles v. Rochester Folding Box Co., 1903, 81 App. Div. 414, 80 N.Y.S. 811, affirmed 1904, 179 N.Y. 87, 71 N.E. 468. In view of the conclusion heretofore stated, we need not determine whether in the circumstances the contract was illegal or whether it was unenforceable only by Nelson because of the duress, but enforceable by plaintiff. See Duncan v. Dazey, 1925, 318 Ill. 500, 149 N.E. 495; Citizens' Nat. Bank v. Polski, 1932, 122 Neb. 658, 241 N.W. 110.

■■ Furthermore, it is to be noted that the rule is not inexorable that a plaintiff, who comes into court with unclean hands, is always to be denied relief, regardless of other circumstances in the case, for "the maxim should not be applied where an inequitable result would be reached." Comstock v. Thompson, supra. If a defendant has been guilty of conduct more unconscionable and unworthy than that of the plaintiff, the rule may be relaxed. Cf. Citizens' Nat. Bank v. Polski and Duncan v. Dazey, both supra. Again, however, we need not determine whether defendant's acts in practicing conscious and deliberate infringement, in subjecting plaintiff to protracted and vexatious litigation, and in making unfounded charges of fraud, as found both in the New York suit and in the instant case, could suffice, in the exercise of the court's discretion, to overcome the defense of unclean hands, were such defense otherwise valid.

## 2. As to the accounting.

(a) Plaintiff's first claim is for the profits earned by defendant on the sale of tires to its New York subsidiary, profits which were not recoverable in the New York case as the New York subsidiary was the sole defendant therein. The decree in that case was for damages based upon a reasonable royalty; the damage was not specifically charged to have been caused solely by reason of the subsidiary's sales. The court held the defendant therein liable as a joint tort-feasor with the defendant herein, and awarded the reasonable royalty for the wrongful acts of both of them; that is, for the manufacture and sale. As that decree has been satisfied, plaintiff concededly no longer has a claim for damages in respect to sales to the New York subsidiary, against defendant in the present suit. But, it contends, though such damages are not recoverable, nevertheless defendant remains liable as trustee ex maleficio for the profits earned by it on sales to the New York subsidiary, profits which have not been diminished by the damages inasmuch as these were paid by the subsidiary and, so far as the evidence shows, defendant herein neither has repaid them nor is it under any legal obligation of indemnity or otherwise so to do.

■■ The amount awarded in the New York case as a reasonable royalty on the 109,882 tires there involved was $549,410, and this amount was doubled by way of punitive damages. Plaintiff elected to take the double damage awarded in lieu of the subsidiary's profits which amounted to $187,113.69.[1] Because the parent company was not before the court, plaintiff was not permitted to prove the manufacturer's profits in the New York case, which, it claimed, amounted to $816,000.[2] Had plaintiff been successful in that case in joining the parent company as a party, the total amount which could have been recovered from the two companies as profits in respect to the tires sold to and by the New York subsidiary, was at the most $1,003,113.69, while the amount actually collected by plaintiff as damages was $1,098,820. Plaintiff therefore has already not only been more than compensated for all of the actual damages sustained by reason of the entire infringement in manufacturing and selling the New York tires,

---

[1] The statute does not allow recovery of profits plus damages, but gives the patentee his choice or what is, in substance, the same, the profits plus any damages in excess thereof. Rev.Stat. § 4921 as amended, 35 U.S.C.A. § 70; Birdsall v. Coolidge, 1876, 93 U.S. 64, 69, 23 L.Ed. 802; Tilghman v. Proctor, 1888, 125 U.S. 136, 148, 8 S.Ct. 894, 31 L.Ed. 664; Baseball Display Co. v. Star Ballplayer Co., 3 Cir., 1929, 35 F. 2d 1; Krentler-Arnold Hinge Last Co. v. Leman, D.C.Mass., 1928, 24 F.2d 423; Expanded Metal Co. v. General Fireproofing Co., D.C.N.D.Ohio, 1917, 247 F. 899. Only in Dowagiac Mfg. Co. v. Deere & Webber Co., 8 Cir., 1922, 284 F. 331, were both profits and the lesser damages allowed.

[2] The profits awarded by the lower court in the instant case on the New York tires amounted to $317,285.15. By reason of the statute of limitations, only about one-half of the sales accounted for in the first case could be considered here.

984

but it has received more than the total profits earned by both infringers on these New York tires. In these circumstances, as plaintiff has been fully compensated, the fact that the subsidiary and not the parent company has made the payment and the parent company is thus enabled to retain its profits, should not justly, and does not create in plaintiff any further right of recovery as to these tires.

 If, in the New York case, the reasonable royalty had been awarded as for a license only to the subsidiary and only to sell, if, in other words, it had not been based upon the wrongful manufacture, sale to subsidiary, and sale by the latter to the public, a different situation would be presented. Profits earned by the parent company's sales to its subsidiary or even damages, if any, suffered by plaintiff by reason of the manufacture and such sales might then well be recoverable, because the subsidiary's wrongdoing would be separate and distinct from that of the parent company. See Dowagiac Mfg. Co. v. Deere & Webber Co., supra, note 1, in which profits recovered against and paid by the manufacturer were held to be no bar to recovery of profits or damages against its vendee for the latter's sales to the public. But, as Judge Caffey's opinion (affirmed in 2 Cir., 1933, 66 F.2d 361) clearly shows, the reasonable royalty in the New York suit covered the entire infringement. Such a royalty is based upon the theory "of a lawful and noninfringing use flowing from a license." Egry Register Co. v. Standard Register Co., 6 Cir., 1928, 23 F.2d 438, 443. Accordingly, if the decree had been against the manufacturer for a reasonable royalty and had been satisfied, its vendee would be immune from suit. Although here the vendee was sued first, since it has paid a reasonable royalty for the manufacture and all sales, defendant's manufacture and sale to its subsidiary are deemed to have been licensed ab initio. The rule on which the master relied that a patentee may recover profits or ordinary damages as distinguished from reasonable royalty, from an infringing manufacturer, and later sue his vendee, is inapplicable. Birdsell v. Shaliol, 1884, 112 U.S. 485, 5 S.Ct. 244, 28 L.Ed. 768; Dowagiac Mfg. Co. v. Deere & Webber Co., supra; Kryptok Co. v. Stead Lens Co., 8 Cir., 1911, 190 F. 767, 39 L.R.A.,N. S., 1; De Laski & Thropp Circular Woven Tire Co. v. Empire Rubber & Tire Co., D.C.N.J., 1916, 239 F. 139.

(b) Plaintiff's second claim is for profits and reasonable royalty on infringing tires not involved in the New York case, which were sold to and by subsidiaries in other parts of the country. The master found that there were 15,899 such tires. On these he allowed a reasonable royalty of $5 a tire, holding that the New York case fixing the reasonable royalty at that figure was res adjudicata. The District Court, while holding that the $5 royalty could not be res adjudicata, interpreted the master's report as also making an independent finding, which it upheld, that $5 was a reasonable royalty.

 We concur that the New York decision is not res adjudicata as to the amount of a reasonable royalty on the tires here involved; the question there was as to reasonable royalty for manufacture and sale to and the sale by the subsidiary, defendant in that case, doing business in the territory in which it made its sales. A reasonable royalty is an amount "which a person, desiring to manufacture and sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make and sell the patented article, in the market, at a reasonable profit." Rockwood v. General Fire Extinguisher Co., 2 Cir., 1930, 37 F.2d 62, 66. "In fixing a reasonable royalty, the primary inquiry, often complicated by secondary ones, is what the parties would have agreed upon, if both were reasonably trying to reach an agreement." Egry Register Co. v. Standard Register Co., supra, 23 F.2d 438, at page 443. Important considerations in the New York case were thus, what the tires were being sold for by that subsidiary, what price they could bring in the conditions of its market, and the profits made on those tires by this defendant, as well as by the subsidiary. The tires involved in the present case were all sold to and through other agencies, some of them to and by a California subsidiary, some to and by exporting subsidiaries, and still others through dealers. The issue in the New York case was the value of a license to manufacture and sell the tires in the market served by that subsidiary. The issue here is the value of licenses to manufacture and sell the tires in different markets. It may be that evidence would show the licenses to be of equal value. But the determination of the value of the one is not res adjudicata or even evidentiary as to the value of the others.

We cannot, however, concur in the conclusion of the lower court that the master made an independent determination of the reasonable royalty which defendant must pay here. We neither so read the master's report nor is there in the record any basis for such a finding. No evidence thereon was offered; plaintiff unfortunately relied exclusively on the binding effect of the New York decree and was content to prove only the number of tires for which defendant was accountable.

While there is thus no basis in the present record to support a recovery of the amount awarded as a reasonable royalty, there is evidence as to defendant's profits which the master found to be $29,221.97. Defendant contends for a reduction in two respects. The first is that the allowance for depreciation on the tire molds used in the manufacturing plant was too small. On consideration of the rather voluminous evidence on this question, we cannot say that the master's conclusion is erroneous. The second is that a deduction for income taxes paid on the profits earned, should be allowed. Inasmuch, however, as the finding of conscious and deliberate infringement is fully warranted by the evidence, we find no error in refusing that deduction. Larson, Jr., Co. v. Wrigley Co., 1928, 277 U.S. 97, 48 S.Ct. 449, 72 L.Ed. 800.

To avoid further litigation, plaintiff may be content with the award of profits on these tires. If so, the decree will be modified by reducing the award to $29,-221.97 with interest from October 19, 1935, and as so modified, affirmed. If, however, plaintiff desires further opportunity to offer evidence as to reasonable royalty, and will so indicate by filing a request therefor with the clerk of this court on or before October 15, 1937, justice, in our judgment, requires in this case that, as in the Egry Case, supra, the decree be reversed and the cause remanded for this purpose, with or without further reference to a master, as the District Judge may deem best. In that event, plaintiff should also have the opportunity to present further evidence as to the tires sold to defendant's export subsidiaries. On the present record, defendant's objection to the award of any damages in respect to these tires, which defendant says number 5,750, would be sustained for want of evidence in support thereof. If the export sales were made by the subsidiaries outside the United States, plaintiff would have suffered no damage on account thereof. Computing Scale Co. v. Toledo Computing Scale Co., 7 Cir., 1921, 279 F. 648, certiorari denied, 1922, 257 U.S. 657, 42 S. Ct. 184, 66 L.Ed. 420. Cf. Victor Talking Machine Co. v. Strauss, C.C.S.D.N.Y., 1909, 171 F. 673. If further proceedings are had to prove reasonable royalty, plaintiff may offer evidence that the sales were completed in the United States, even though for use abroad. If in any such proceedings, the reasonable royalty or other damages shall be determined, the district court will determine what amount if any shall be added thereto as punitive damages.

Whether the decree be modified and affirmed or, on plaintiff's election, be reversed for further hearing in accordance with the views hereinabove expressed, costs of the present appeal will be taxed against appellee; all other costs heretofore incurred, against appellant.

## Supplemental Opinion.

### PER CURIAM.

The present appeal having been fully argued and briefed, an opinion was therein prepared and published as of September 1, 1937. The court being then in recess, the opinion was not announced, nor was any order for mandate entered. When the court resumed its sessions in October it became apparent that each of the parties desired to urge upon the court the propriety of amending or amplifying its proposed mandate, and decision was reserved until consideration could be given to the grounds for their respective proposals. The court consented to receive additional briefs from each of the parties, and these have now been considered.

The appellant urges error and a departure from established practice in our granting to the appellee of an option to have the case reopened upon remand to the court below for further proofs as to reasonable royalty upon tires sold to customers other than the New York subsidiary and not involved in the New York litigation on the ground that the appellee had full opportunity to make such proofs at the accounting below and should not now be given another chance. It further urges that we were wrong in our conclusion that "the finding of conscious and deliberate infringement is fully warranted by the evidence" for the reason that the

986

finding of the master in that respect was based solely upon conclusions of the court in the New York case wherein no issue of conscious and deliberate infringement was raised by the pleadings, so that the decree therein upon this point whether right or wrong, was not res judicata. The appellant therefore urges that if the case is to be reopened upon the question of damages it be not foreclosed from further defending against the charge of conscious and deliberate infringement.

The appellee urges a reconsideration of our conclusion that the finding of a reasonable royalty in the New York case is not res judicata of the issue as to reasonable royalty in markets not served by the New York subsidiary, and it further urges that the appellant is foreclosed from making further proofs in defense of the charge of conscious and deliberate infringement both by the New York decision and the state of the record below, where full opportunity for such defense was presented.

Our conclusion upon further consideration is that our opinion of September 1, 1937, should stand, and it is announced as the opinion of the court save as it is amended in manner following:

On page nine of the opinion as printed for the court, 95 F.2d at page 984, it should be made clear that "the issue in the New York case was the value of a license to manufacture and sell tires in all parts of the United States except the States west of the Rocky Mountains," and this sentence is substituted for the sentence beginning in the eighth from the last line of the first full paragraph on page 9 of the opinion.

It being our present view that the question of conscious and deliberate infringement was not raised by the pleadings in the New York case, and that the master's finding in respect to it is not warranted by the evidence, as we had at first concluded, our opinion as printed is further amended by striking from it the last sentence of the first paragraph on page 10,[1] 95 F.2d at page 985, and by substituting for the last sentence of the second paragraph on page 10 the following:

"If in any such proceedings, the reasonable royalty or other damages shall be determined and it shall also therein be de-

termined upon full opportunity for proofs accorded to both parties that the appellant was guilty of conscious and deliberate infringement, the District Court will determine what amount if any shall be added thereto as punitive damages, but no punitive damages shall be assessed in the absence of such finding."[2]

It is so ordered.

---

[1] The issue on remand being one of damages, the propriety of allowing income tax deduction is no longer material.

[2] Judge Mack did not participate in consideration of supplemental briefs nor in preparation of per curiam.