Booth, Judge,
delivered the opinion of the court.
The plaintiff company is the assignee of Letters Patent No. 1228120, issued to Melchior Lenke on May 29, 1917, for a cargo beam. Lenke on September 20, 1920, assigned his patent to Thomas E. Chappell, of New York, and Chappell on October 1, 1920, duly assigned the same to the plaintiff company.
A cargo beam is no more nor less than a beam employed in combination ivith other elements to withstand the weight of cargo to be removed from the hold of vessels alongside a pier or wharf and deposited on the pier or in the warehouses fronting on the same. Beams are, of course, old and cargo beams, as such, have been in use for years. The method existing prior to the advent of the beam in suit was the employment of two channel beams spaced several inches apart, firmly riveted together at the top and bottom by means of angle irons or plates, and rigidly affixed at either end to two uprights extending upward through the roof of the warehouse in brackets designed for the purpose. At stated intervals along the lower web of the beam holes were bored, by means of which a saddle or U bolt was fastened by the use of bolts and nuts, and to this saddle-hoisting taclde a “ Burton fall ” was fixed. The cargo beam constituting the vital element of the device, as attempted to be described in the above comments, was permanently established in the combination device; its upright position was firmly fixed, and its position stationary, never yielding in this respect, no *438 matter from what angle the stress weight or force of the operation of removing cargo from the vessel was applied.
The record shows that a beam adaptable for the purpose weighed 3,300 pounds and must possess the full strength of withstanding the pull of cargo weights from both a vertical and a diagonal angle. The process of discharging cargo from a vessel by means of the rigid cargo beam is precisely depicted in the annexed drawing designated Appendix 1.
Lenke conceived the idea of taking the mechanism in existence and substituting for the fixed beam a single I beam of about 1,300 pounds in weight. At each end of the I beam he attached laterally a strong bar by means of rivets and . angle irons, providing a hole near its upper end, through which holes he introduced pivots, thereby enabling the cargo beam to swing into any angle from which the load was applied. In other words, with his beam, into the center or neutral zone of which he fastened his u bolts to receive the hoisting tackle, it was possible for the first time to utilize a cargo beam in such a way that it presented to the load it must carry its maximum strength, no matter whether the stress came from a vertical or diagonal angle. As a matter of fact, the real worth of the invention lies in the employment of a light cargo beam, undiminished in resisting power because of its ability to swing into a diagonal position when force is applied from that angle. So long as the load to be lifted is hoisted vertically and the stress of the pull applied directly, a comparative light beam is sufficient. The necessity for reinforcement and much heavier beams lies in the fact that in discharging cargo from a vessel both vertical and diagonal pulls are always involved, and the rigid beam firmly fixed in position, previously adapted to a vertical strain, a direct weight, must be of far greater strength to withstand the process of discharging cargo. This is indicated in Appendix 2. Figure VII represents the rigid cargo beam and Figure VIII the patent in suit. In Figure VIII the beam swings in response to the application of the load wherever it may be situated and presents its full inherent strength by adapting its position to the angle of the hoist without more than normal strain under any circumstances. The additional feature for which the patentee claims novelty is the *439 attachment of the saddles to the I beam by means of holes projected through the center of the beam at the point of its neutral axis. Much stress is laid upon this feature. It is not denied, in fact is demonstrated, that perforation of the beam along the line of its neutral axis does not weaken the structure, whereas perforation at other places has a tendency to and does impair to some extent the carrying power of the same.
The plaintiff’s patent is obviously a combination patent, and in view of the prior art limited to the exact terms of the claims. It is, to say the most for it, quite narrow and, as the history of its course through the Patent Office clearly demonstrates, is limited to an improvement of an existing device in the manner and in connection with conjunctive elements set forth in the specifications and claims. To this extent, and within this narrow compass, we believe the plaintiff is an inventor. While cargo beams are old, and their use extended, nevertheless the plaintiff did contribute in a novel way a means adaptable to function successfully and accomplish the end with less expense and prolong without doubt the life and efficiency of the device created Over the old one. The plaintiff’s swinging beam, the vital factor of a cargo-beam mechanism, is admittedly an improvement over the old rigid beam and will without doubt retain its efficiency much longer and at a reduced expense to the owner.
The defendant insists that “ Lenke’s invention is unpat-entable because it embodies nothing more than a natural and normal modification of existing ideas.” One may see now, after the fact, how decidedly advantageous and how easily the most ordinary person could have modified existing ideas. This is patent to the most casual observer, for Lenke’s cargo beam has almost universally superseded the old one. The defendant used it and almost every pier in the country has installed it. If Lenke takes things old in the art and by the introduction of a substitute, an element known to function in a certain way under certain conditions, compels the old device with the substitute element to perform a like service under much more favorable conditions at a much less expense and for a much longer space of time, is he to be *440 denied bis claim to invention because anyone could easily have foreseen the result? No one did foresee it and the art itself is not exceedingly old. To those who use a cargo beam, or for the benefit of those who may desire to use one, Lenke’s beam offers a solution of the problem at a mimi-mum of cost with a maximum of efficiency. That it is an improvement over the existing device is more than apparent by its extensive use.
What did Lenke invent? The defendant concedes that Lenke’s patent is novel “ in the sense that there is nothing in the prior art exactly like it, * * * and it is useful in the sense that it will support hoisting tackle.” What Lenke was seeking to do was to support hoisting tackle. He observed the old cargo beam made up of two beams, spliced together, permanently attached to the upright posts, splendidly adapted to vertical stress. As thus reinforced, the double beam would serve as a means toward the end. Lenke saw the possibility of discarding the heavy, expensive beam in the old device, and substituting for it a beam of lighter weight, so fixed in place as to swing into the angle of resistance, perform the identical function, and maintain during the operation the full, maximum tensile strength of the beam itself. It is true he improved an existing idea, but in so doing 'he brought into being a new, improved idea, never before suggesting itself to those skilled in the art, a swinging cargo beam. To this he addresses his claims, and to this extent we believe his idea possesses novelty. Because his patent is narrow and his contribution to the art limited is not sufficient to invalidate his claims. The Patent Office so construed his claims, and he was content with' such a construction. Lenke devised a combination of elements not theretofore in the art, made no more pretentious claims, and is expressly limited thereto.
Defendant makes some point of the failure of the patentee to observe section 4900, Bevised Statutes. This, we think, in so far as the present record discloses, is determined by the stipulation of the parties, wherein written notice appeal's. It is primarily a question going to quantum of damages, rather than a substantial defense at this stage of proceedings. *441 Tlie case is to be remanded for ascertainment of damages, and the question presented may well be reserved until that time.
The plaintiff protests against the receipt as evidence, tending to establish anticipation, of the exhibits disclosing the prior art. The competency of this line of proof is challenged upon the theory that the act of June 25,1910, 36 Stat. 851, amends section 4919, Revised Statutes, and therefore section 4920 assimilates the practice in patent cases in this court with the patent procedure in United States district courts, as prescribed by the terms of section 4920, R. S. The act of June 25, 1910, is not an amendment of section 4919, R. S. It is a jurisdictional statute granting the right to sue the United States in this court in infringement cases. The proviso to the act reserves to the United States all the usual defenses to a suit for infringement as set forth in Title Sixty of the Revised Statutes, “ or otherwise.” Manifestly, it was the intent of Congress to place a suit for infringement by the United States of a patent upon the same basis, in all respects as to meritorious defenses, as a suit of a similar nature in the district courts. Prior to the passage of this act the patentee was without a remedy against the Government. Section 4920, R. S., provides expressly for a definite line of procedure in cases where the defendant relies upon the prior art to invalidate a patent. The thirty days’ notice required, as very aptly observed, is designed to afford the plaintiff ample time before trial to acquaint himself with the exhibits disclosing the prior art and equip himself for an intelligent cross-examination of witnesses called to interpret the prior patents. This is, indeed, a vital necessity in cases in the district courts, supported and discredited generally by oral testimony given before the court, as well as in cases where depositions are taken and subsequently exhibited to the court. But the obvious difference between the procedure in the district courts and in this court effectively precludes the injustice sought to be obviated by section 4920 from arising in proceedings before this court. Section 157 of the Judicial Code gives to this court express authority to establish rules for its government and “ regulate the practice therein,” and in *442 conformity with the conferred authority we have established rules and regulations designed to cover a practice devoid of formal pleadings, except as provided in section 159 of the code, and wherein the testimony of witnesses appears almost universally in the form of depositions. The plaintiff in patent litigation is never embarrassed by the failure to give the notice required by section 4920, R. S., in infringement cases before this court, for ample time always remains to meet the issue. The chief criticism of the Department ,of Justice is the consumption of too much, instead of too little, time in this respect. We do not believe that Congress intended by the passage of the act of June 25, 1910, to circumscribe the general authority conferred on the court in section 157 of the code in a mere matter of procedure. The act of June 25, 1910, does not so state. Its language is clearly susceptible of a contrary construction. The “United States may avail itself of any and all defenses, general or special, which might be pleaded by a defendant in an action for infringement, as set forth in Title Sixty of the Revised Statutes, or otherwise.” We require no special pleas in patent cases. The defendant interposes none. As a matter of fact, a general traverse to the petition is usually filed by the clerk under rule 34, and the case is then at issue. Congress was concerned with a positive reservation of all defames to the United States in patent cases for infringement and was not by the statute intending to modify or change our established rules of practice and procedure obtaining since the establishment of the court.
Whatever rights the plaintiff may have had under any circumstances have been waived. The defendant examined its expert witnesses, at which time the evidence complained of was first exhibited to the plaintiff, on February 18, 1922. Plaintiff then objected to the testimony, but subsequently, on May 5, 1922, more than 30 days after receipt of the exhibits, examined at length its own expert with especial reference to these identical exhibits. The subject was gone into in great detail and exhausted. The plaintiff now assigns no cause for the elimination of the testimony from the record other than a failure to observe the terms of the statute, the case itself *443 having been briefed and argued upon its merits by both parties.
The- case will be remanded to the general docket for further proceedings respecting the issue of damages. It is so ordered.
Geaham, Judge; Hat, Judge; Downey, Judge; and Campbell, Chief Justice, concur.