Booth, Chief Justice,
delivered the opinion of the court:
The Supreme Court in reversing the above-entitled case remanded the same “for additional findings to show how many of the patented beams were made by contractors and furnished to the defendant after the passage of the act of July 1, 1918, and what would have been a reasonable royalty therefor.” In addition to the foregoing order the court said:
“The question of the amount of or the rule for measuring the recovery we do not decide, but leave that for further argument and consideration by the Court of Claims, because of the novel and only partial application of Section 3477 Rev. Stat.” (275 U. S. 331, 346.)
The original petition in the case prayed for a judgment of $132,000. Subsequent to reversal and remand the demand expanded to $498,564.18.
Following the mandate of the Supreme Court the case was remanded to our general docket and leave granted the parties to take proofs in accord with the Supreme Court’s opinion. In response to this last order the plaintiff adduced a considerable volume of testimony by which it is now claimed a judgment for the sum last stated above is justified under the law. The claim now asserted is made up of the following items, which we discuss in order. The first is a claimed saving of $105,300.00 in installation cost. This item is predicated, from the standpoint of fact, upon the alleged difference between the quantity of steel required in the fabrication of the old as compared to the new beam. That there was a saving in this respect is true, i. e., the new beam was of lighter weight. This court found as a fact khat the difference in weight was 2,000 pounds, which at 6y2 cents per pound amounted to $105,300.00, and we repeat that finding now. (Finding IV, 61 C. Cls. 397.) Interest to the amount of $62,088.00 is claimed upon the above sums.
The second item is an unusual and novel contention. Predicating a right of recovery upon a strict analogy between this case and one of like character against a manu *68 facturing infringer, the plaintiff asserts of injunction to restrain the manufacturer, a right of which it is deprived by the act of July 1, 1918, and which is capable of being reduced to a monetary value. The contention, we think, appears clearly from the following quotation from the plaintiff’s brief:
“ The witness Lenke shows that the total cost of replacing the 810 infringing cargo beams with an equal number of noninfringing cargo beams of equal capacity would, at the time of the installations of the infringing cargo beams, have been $166,050. His calculation adds the cost of the labor of removing the infringing beams and erecting the non-infringing beams in their places to the cost of the steel required for the latter and subtracts the scrap value of the steel of the former. The calculation is limited strictly to the net cost of substituting 810 noninfringing beams for the 810 infringing beams at the time of completion of the installation of the latter by the contractors.
“ Under the act of 1910 the contractors would have been liable to suit for injunction by the owner of the patent against future infringement in addition to suit for damages and profits for past infringement, and, if issued, such injunction would have compelled an expenditure of $166,050 by the contractors in order to deliver an equal number of noninfringing beams to the defendant. This expenditure the contractors avoided, and this money they saved, by operation of the act of 1918, and the defendant, as indemnitor under that act for its contractors in their infringements, is liable to plaintiff for it as the injunction value — the money saved by the immunity from injunction — in addition to being liable to plaintiff for the gains and advantages realized by the contractors in the infringing manufacture. The contractors saved $103,480 by the infringing manufacture. They saved the further and additional sum of $166,050 by their immunity from injunction arising from the act of 1918.”
Interest to the amount, of $99,360.00 is likewise claimed upon this item.
The next two items are limited to the defendant’s liability for use, the former being rested upon the contractor’s liability in infringement cases. The plaintiff under these two items asserts that the beams require periodic painting to preserve the steel, and that, inasmuch as the Lenke beam is *69 of much smaller surface than the old beam, the upkeep of the former is materially reduced, and this applies with equal force to the essential appurtenances, both in upkeep and replacement. It is a trifle difficult to fathom the intricacies of the somewhat inexperienced expert accountant who evolved the figures upon which the plaintiff relies. Without even having seen the patented beam, and relying wholly upon the testimony of another witness, he reaches a conclusion as to the life of the patent beam and essential appurtenances, and applying the total cost of maintenance in a period of fifty years concludes, on the theory of apportionment, that the saving in upkeep would amount to $59,-809.18, to which amount interest is added in the sum of $7,506.40.
All of the foregoing items are claimed under the plaintiffs’s construction of the Supreme Court opinion. The argument for allowances is attempted to be justified upon a contention that the Supreme Court in its opinion, construing the act of July 1, 1918, expressly held that as to compensation the plaintiff was to be put in precisely the same situation he would have been had his right of action against the contractor not been denied him, and that, inasmuch as the items claimed could have been recovered in an action against the contractor, the Supreme Court clearly held the United States liable to the same extent. The question is not free from difficulty, and in our view of the case, without committing ourselves to the specific items claimed, we doubt without deciding the merits of the contention. Not wishing to foreclose the plaintiff from its right to insist upon its contentions, we have set forth the same and the items upon which it relies. However, the court is of the opinion that the case in the present instance does not turn upon this point. There exist certain axiomatic principles of patent law of ancient origin and continuously approved, which do not require citation, covering the methods by which a patentee may avail himself of his patent monopoly, and the rule for the ascertainment of damages for an invasion of his rights, after the patentee selects the method. First, a patentee may throw his invention open to the public upon the condition that the *70 user pay to him a fixed royalty, or he may retain exclusive use of the same, let it out to use only upon an exclusive license basis, and thus prohibit the remainder of the public from its use under any conditions. If the patentee chooses the former, fixes a royalty for use, then without doubt the extent of his injury is the loss of the fixed royalty. This is precisely what happened in this case. Beyond all doubt the plaintiff contemplated the enjoyment of this patent by anyone upon the payment of a fixed royalty. The record discloses that neither the plaintiff nor its assignors manufactured the patented cargo beams; so far as the record shows, not a single beam has ever been manufactured by the plaintiff or its assignors in accord with the Lenke invention. On the contrary, the president of the plaintiff company in his testimony in response to the following interrogatory:
“ Is there any regular and established royalty for the use of cargo beams under the patent in suit,”
said:
“ Yes; the regular charge is $20 per beam.”
This is not all; this same company instituted a test case against the Bethlehem Steel Company, involving this patent, in which a claim for a fixed royalty of $20 per beam was asserted, and prior to this litigation $10 per beam was accepted as a royalty from the city of New York. It is true that this litigation resulted adversely to the plaintiff and the city of New York was enabled to escape the payment of any royalties; nevertheless the plaintiff by its own conduct offered the patented invention to the public upon the payment of a fixed royalty of $20 per beam. The plaintiff brought forth in the original case (58 C. Cls. 433) a record of its own production, a record of volume and directness, establishing a fixed royalty of $20 per beam. This was done by disclosing a voluminous correspondence with numerous manufacturing establishments throughout the country, to whom the patentee had granted licenses to use, the inventor disclosing the reasonableness of such a fixed royalty and in no single instance insistence by the plaintiff of a greater sum. The beam went into general use and the record does *71 not disclose a single license fee in excess of $20 and the record shows that the plaintiff at one time offered the Gov-' ernment a license to use the invention upon a $20 per beam royalty basis. In the present case we are asked to award judgment on the basis of $224 per beam royalty, an increase in excess of |10% of the amount ever recovered from any source for the use of the invention. Aside from this decided inflation, there is no competent evidence upon which to predicate such a judgment.
The plaintiff’s patent was in no sense a pioneer one. In the original opinion of this court we said:
“ The plaintiff’s patent is obviously a combination patent, and in view of the prior art limited to the exact terms of the claims. It is, to say the most for it, quite narrow and, as the history of its course through the Patent Office clearly demonstrates, is limited to an improvement of an existing device in the manner and in connection with conjunctive elements set forth in the specifications and claims. To this extent, and within this narrow compass, we believe the plaintiff is an inventor. While cargo beams are old, and their use extended, nevertheless the plaintiff did contribute in a novel way a means adaptable to function successfully and accomplish the end with less expense and prolong without doubt the life and efficiency of the device created over the old one. The plaintiff’s swinging beam, the vital factor of a cargo-beam mechanism, is admittedly an improvement over the old rigid beam and will without doubt retain its efficiency much longer and at a reduced expense to the owner.” (58 C. Cls. 433, 439.)
In the early case of Seymour v. McCormick, 16 Howard 480, 490, 491, the Supreme Court held:
“ Where an inventor finds it profitable to exercise his monopoly by selling licenses to make or use his improvement, he has himself fixed the average of his actual damage, when his invention has been used without his license. If he claims any thing above that amount, he is bound to substantiate his claim by clear and distinct evidence. When he has himself established the market value of his improvement, as separate and distinct from the other machinery with which it is connected, he can have no claim in justice or equity to make the profits of the whole machine the measure of his, demand. It is only where, from the peculiar circumstances of the case, *72 no other rule can be found, that the defendant’s profits become the criterion of the plaintiff’s loss.
* * * * *
“It appears, from the evidence in this case, that McCormick sold licenses to use his original patent of 1834 for twenty dollars each. He sold licenses to the defendants to make and vend machines containing all his improvements to any extent for thirty dollars for each machine, or at an average of ten dollars for each of his three patents. The defendants made and sold many hundred machines, and paid that price and no more. They refused to pay for the last three hundred machines under a belief that the plaintiff was not the original inventor of this last improvement, whereby a seat for the raker was provided on the machine, so that he could ride, and not be compelled to walk as before. Beyond the refusal to pay the usual license price, the plaintiff showed no actual damage.”
Again in Rude v. Westcott, 130 U. S. 152, a case cited in plaintiff’s brief, the court said:
“ In order that a royalty may be accepted as a measure of damages against an infringer, who is a stranger to the license establishing it, it must be paid or secured before the infringement complained of; it must be paid by such a number of persons as to indicate a general acquiescence in its reasonableness by those who have occasion to use the invention; and it must be uniform at the places where the licenses are issued.”
This case, we think, meets every condition of the above citation. This court does not recite the evidence in the findings upon which the finding rests, except in the event of necessity for departing from the ultimate facts. We have found $20 to be a fixed and established royalty for the use of the invention, and the finding so made was not predicated upon licenses granted at remote periods of time or in sporadic instances. It is an ultimate fact gleaned from a record of contemporaneous dealings and positive actions of those most concerned in reaping the greatest profit from a patented monopoly.
Whether we are right or wrong, we are firmly convinced that in no event may a judgment for the so-called “ injunctive value,” of which the plaintiff alleges it was deprived by *73 the act of July 1, 1918, be awarded. This contention we regard as more or less fanciful. No such substitution as it is predicated upon was made, nor was it required.
Economy in upkeep and savings in replacements effected by the use of a patent are factors to be considered in ascertaining the validity of a patent. A device which facilitates output and materially reduces expense in construction does result in diminished cost to the user. We found this fact in reference to the Lenke beam and the Supreme Court commented favorably upon the same in ascertaining novelty. “ There is no presumption of law or fact,” says Robinson on Patents, “ that the plaintiff has lost all that the defendant has gained, or that the defendant’s advantage is equal to the plaintiff’s loss.” Proof upon the point is permissible as a factor in ascertaining damages in a direct proceeding between the patentee and an infringer, and in the absence of a fixed royalty usually it is available to disclose profits realized, and the single fact of saving in production is not alone sufficient to warrant a' judgment for the amount proved. Other factors entering into the equation must also be established, and from all the facts pertinent to the issue the damages are to be ascertained. The proof here offered is not considered in making up our judgment, because of our holding of a fixed royalty for the use of the patent. In the absence of such a holding, we think the proof would be pertinent but not conclusive upon the issue of compensation for use, inasmuch as it does in some degree reflect the value of the use to the defendant. The primary difficulty attached to the proof offered in this case is its hypothetical character. The evidence, as previously observed, is predicated more or less upon conjecture and involves speculative features detracting from its probative effect.
We think under the authorities that the plaintiff is entitled to interest, under the law as stated in the opinion of the Supreme Court. The rule, as stated in Robinson on Patents (Vol. III, sec. 1066, p. 361), dates an allowance of interest upon a fixed royalty from the time the royalty should have been paid to the patentee to the date of judgment. The number of beams used by the defendant has never been in issue, *74 and under the rule we add to the principal sum of $16,200.00 interest at the rate of 6 per cent per annum as follows:

Sinnott, Judge; Green, Judge; Moss, Judge; and Graham, Judge, concur.