## SWAN CARBURETOR CO. v. NASH MOTORS CO.
### No. 5026.

Circuit Court of Appeals, Fourth Circuit.

Feb. 5, 1943.

F. O. Richey and Blythe D. Watts, both of Cleveland, Ohio (H. F. Schneider and Richey & Watts, all of Cleveland, Ohio, and Edwin F. Samuels, of Baltimore, Md., on the brief), for appellant and cross-appellee.

Charles H. Walker, of New York City (Fish, Richardson & Neave, of Boston, Mass., and Venable, Baetjer & Howard, of Baltimore, Md., on the brief), for appellee and cross-appellant.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The appeal in this case was taken from a judgment of the District Court whereby the Swan Carburetor Company was awarded the sum of $138,711.48 for infringement by the Nash Motors Company of United States patents Nos. 1,536,044 and 1,636,721, kindred inventions relating to the inlet manifold in an internal combustion engine. We considered patent No. 1,536,044 in Swan Carburetor Co. v. Nash Motors Co., 4 Cir., 98 F.2d 115 and in Nash Motors Company v. Swan Carburetor Co., 4 Cir., 105 F.2d 305, wherein it was noted that validity and infringement of the patent had been established by the prior decision in the Sixth Circuit in Reeke-Nash Motors Co. v. Swan Carburetor Co., 88 F.2d 876. In that case, certain manifolds, called in this litigation the first group of manifolds, were held to infringe the patent; and the holding was binding on the Nash Motors Company because it was in privity with the defendant, the Reeke-Nash Motors Company. When the case came before us we held that the patent was not infringed by a second group of manifolds used by the Nash Company which had not been passed upon in the prior suit in the Sixth Circuit. We remanded the case to the District Court for an accounting with respect to the first group of manifolds.

Proceedings were then had before W. Ainsworth Parker as special master, whose findings of profits and damages were approved in every respect by the District Judge except that interest at 6% was added to the amount of damages ascertained. The amount awarded by the decree of the District Court was comprised of the following items:

| | |
|---|---:|
| Profits on 1614 unmounted manifolds separately sold........$ | 2,031.01 |
| Interest thereon from February 9, 1942, the date of the master's report, to July 20, 1942, the date of the court's decree | 54.50 |
| Damages on 349,019 mounted manifolds sold as part of motor cars .................. | 80,250.20 |
| Interest thereon from November 5, 1930 to July 20, 1942...... | 56,375.77 |
| | $138,711.48 |

In addition the court decreed that the plaintiff recover its taxable costs incurred in the determination of the issues with respect to the defendant's first group of manifolds prior to the accounting, and that the defendant recover its taxable costs incurred in determination of the issues in respect to the defendant's second group of manifolds, and that each party pay one-half of the costs incurred in connection with the accounting except that the costs incurred in connection with a motion by plaintiff to amend its complaint be taxed in favor of the defendant.

Both parties appealed from this judgment, the plaintiff on the ground that the award was grossly inadequate; the defendant on the ground that only a nominal recovery should be allowed either as profits or damages. The plaintiff concedes that it is not entitled to both profits and damages on the same manifolds but maintains that it has the option to use that method of calculation which produces the larger return. See, Tilghman v. Proctor, 125 U.S. 136, 8 S.Ct. 894, 31 L.Ed. 664; Baseball Display Co. v. Star Ballplayer Co., 3 Cir., 35 F.2d 1; Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., 6 Cir., 95 F.2d 978, certiorari dismissed 306 U.S. 665, 59 S.Ct. 459, 83 L.Ed. 1061; Expanded Metal Co. v. General Fireproofing Co., D.C.N.D.Ohio E.D., 247 F. 899; Krentler-Arnold Hinge Last Co. v. Leman, D.C.Mass., 24 F.2d 423; Riverside Heights Orange Growers Ass'n v. Stebler, 9 Cir., 240 F. 703. With respect to the defendant's sale of 1614 infringing unmounted manifolds the plaintiff is satisfied with the allowance of $2,031.01, the total profits earned by the defendant with interest from the filing of the master's report; but with respect to the sale of 349,019 infringing manifolds sold as part of motor cars, the plaintiff claims that it should not

be limited to the recovery of the sum of $80,250.20 calculated on an established royalty basis, with interest from November 5, 1930, but should be allowed a much larger sum for profits with interest from the date of the master's report.

The plaintiff realized that the entire profit gained by the defendant on the sale of its motor cars did not flow from the patented device and therefore endeavored to ascertain by apportionment the part of the profit fairly attributable to the manifold. Three methods of computation were submitted, based on the finding of the master that the infringing T-shaped Swan manifold produced 14.70% more horse power than the island manifold previously used by the defendant. In these computations the profits from the infringement were calculated by applying this percentage to the profits (1) from the manufacture and sale of motors; (2) from the manufacture and sale of power plants, assuming that the profit on a power plant was proportionate to its part of the cost of the car; and (3) from the manufacture and sale of power plants, assuming that half of the profit from the sale of the car was attributable to the power plant. According to the first method the profit was $944,017.01; according to the second, $1,590,410.57, and according to the third, $4,190,143.19. The special master rejected all of these computations and his findings and opinion were approved by the District Judge. In his opinion the special master said:

"Considering these exhibits from a purely theoretical point of view and without any conscious or subconscious desire to figure the profits up or down, there seems to be no reason to prefer any one of these three methods over another. All seem equally logical. Plaintiff's attorney selected Exhibit 264 (the third method) as most accurately stating the profits which the defendant received from the sale of the manifolds. He, however, gave no satisfactory reasons for his preference, and the accountant who made up the exhibits expressed no preference of one over another. There is nothing in the testimony which would justify a decision in favor of one rather than another of the three exhibits. This fact alone casts serious doubt on the propriety of selecting any one of them, since a theory which leads to such diverse results on equally logical grounds is obviously of doubtful validity.

"There is, moreover, a compelling reason for disregarding the results arrived at in all three exhibits. They are all based on the assumption that the profit which the defendant derived from the manufacture and sale of the infringing manifolds is to be determined with reference to their efficiency as compared with that of the island manifold previously used by defendant. There is no sufficient proof that this increase in efficiency increased the number of cars sold or the amount of profits per car received. There was an increase in defendant's production following the adoption of the infringing manifolds but it is not shown that it was caused thereby. Presumably this increased efficiency, to the extent that it was known to the public, operated, in connection with a number of other factors, to increase the sale of the cars, but there is no evidence which would justify the assumption that the profit on the cars increased in the same ratio (or even in any substantial degree), as the increase in efficiency, even assuming that the island manifold should be accepted as the standard of comparison. For this reason I am unable to accept as even approximately accurate the profits shown by plaintiff's Exhibits 259, 261 and 264.

"Plaintiff's Exhibit 262 purports to show the savings which resulted to the defendant from the use of the infringing manifold. The exhibit indicates savings of $3,862,229.20 from the use of manifolds sold with cars. The exhibit apparently is based on the theory that the defendant's manufacturing cost of the cars containing the infringing manifold was reduced to the extent shown by reason of the increased horsepower resulting from the use of the infringing manifolds. There is nothing in the testimony to show that the defendant in fact made any savings by the use of the infringing manifolds. The computation apparently assumes that the defendant, if it had not used the infringing manifolds, would have been forced to increase the horsepower of its cars to an equivalent extent by other means. There is no basis for this assumption in the evidence.

"I find and conclude, therefore, that the plaintiff has not established the profits, if any, which the defendant made from the infringing manifolds sold integrally with automobiles."

This finding is supported by conclusions reached in litigation over the patent. In our prior decisions we found that the first group of manifolds, that infringed the patent, produced no better results than the second group that did not infringe; and

the decision in a more recent case, Swan Carburetor Co. v. Chrysler Corp., 6 Cir., 130 F.2d 391, seems to be in accord with the view we have taken that the earlier Matheson manifold, upon which the defendant's second group of manifolds was based, was not a failure but a substantial success. Moreover, the manufacture and sale of Swan manifolds under license has been abandoned to a large extent and it seems clear that the invention did not actually have the merit which it was formerly supposed to possess. Our conclusion is that the plaintiff has failed to show that the defendant derived a profit from the use or sale of infringed manifolds mounted in automobiles.

The plaintiff, however, contends that any failure of proof in this respect is due to the sale of the mounted manifold as part of a completed motor car for a stated purchase price without any attempt on the part of the defendant to segregate the profit on the manifold. As a result, it is said, the profits on the manifolds were commingled with the profits on the other parts of the cars and if it has now become impossible to disentangle and apportion the profits, the only alternative is to award to the plaintiff the entire profits on the gross sales by the defendant during the period of infringement. Rather than impose upon the defendant this great obligation, which the plaintiff recognizes to be excessive, we are urged to give approval to the plans of apportionment proposed by the plaintiff.

In considering the question of profits in patent cases the courts have had frequent occasion to apply the principles which govern when the patent has produced only a part of the profits gained by the infringer in the sale or use of the patented device. Where a patent though using old elements gives the entire value to the combination, the patentee is entitled to recover all the profits. Hurlburt v. Schillinger, 130 U.S. 456, 472, 9 S.Ct. 584, 32 L.Ed. 1011. But, when the patent has created only a part of the profits, the plaintiff's recovery is limited thereto; and this rule applies whether the patent covers the whole or only a part of the infringing machine. In the pending case by far the greater amount of profits was derived from the sale of motor cars in which the infringing manifolds constituted only a minor part. The rule to be followed in such a situation is thus set out in the leading case of Westinghouse Co. v. Wagner Mfg. Co., 225 U.S. 604, 615, 616, 32 S.Ct. 691, 694, 56 L.Ed. 1222, 41 L.R.A., N.S., 653: "But there are many cases in which the plaintiff's patent is only a part of the machine and creates only a part of the profits. His invention may have been used in combination with valuable improvements made, or other patents appropriated by the infringer, and each may have jointly, but unequally, contributed to the profits. In such case, if plaintiff's patent only created a part of the profits, he is only entitled to recover that part of the net gains. He must therefore 'give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative; or he must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature.' Garretson v. Clark, 111 U.S. 120, 4 S.Ct. 291, 28 L.Ed. 371."

The whole matter has been recently reviewed in Sheldon v. Metro-Goldwyn Corp., 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825, in determining the profits gained by the infringement of a copyright. It was held that the remedy has been assimilated by statute to that recognized in patent cases and that when profits are mingled, even in cases of deliberate plagiarism, only that part attributable to the use of the copyrighted matter may be recovered. Such part, however, may be ascertained by a reasonable approximation and to that end expert testimony may be used. In the exposition of the principles involved, the court quoted (309 U.S. at page 400, 60 S.Ct. at page 684, 84 L.Ed. 825) the following statement as to the rule in patent cases from Tilghman v. Proctor, 125 U.S. 136, 146, 8 S.Ct. 894, 31 L.Ed. 664: "The infringer is liable for actual, not for possible, gains. The profits, therefore, which he must account for, are not those which he might reasonably have made, but those which he did make, by the use of the plaintiff's invention; or, in other words, the fruits of the advantage which he derived from the use of that invention over what he would have had in using other means then open to the public and adequate to enable him to obtain an equally beneficial result. If there was no such advantage in his use of the plaintiff's invention, there can be no decree for profits, and the plaintiff's only remedy is by an ac-

tion at law for damages." See, also, Mishawaka Mfg. Co. v. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381.

But sometimes it is an impossible task to separate the profits due to the patent from the profits due to other causes and in such event it has been broadly stated in some of the decisions that, when the defendant is responsible for the blending of the lawful with the unlawful parts, he must abide by the consequences and account for the entire profits from the infringing sales. This phrasing of the rule, however, has been employed in cases where the infringer has added improvements or changes of his own to the patented structure and has so mingled his contribution with the original that any segregation of profits has become impossible. The burden of separating the profits at his peril, however, does not rest upon the defendant when he uses the patented structure without change as part only of a larger machine and there is no practicable way in which apportionment records may be kept. Elizabeth v. Pavement Co., 97 U.S. 126, 141, 24 L.Ed. 1000; Egry Register Co. v. Standard Register Co., 6 Cir., 23 F.2d 438; Stromberg Motor Devices Co. v. Zenith Detroit Corp., 2 Cir., 73 F.2d 62, 65; Columbia Machine & S. Corp. v. Adriance Machine Works, 2 Cir., 79 F.2d 16. This limitation, of course, does not deprive the plaintiff of any recovery of any profits on the infringement. If he can show that the invention has in fact contributed to the profits and can furnish an approximate estimate of the amount of the contribution by expert testimony or otherwise, his right to a judgment for profits is clear. In the pending case, however, as we have seen, the plaintiff has failed in both respects as to the mounted manifolds sold in the defendant's motor cars.

Although profits are not recoverable in this case, the plaintiff may be compensated in damages for the use of its patents in the way pointed out by the District Court, that is to say, on an established royalty basis. The evidence shows that beginning in June, 1923, important manufacturers of motor cars operated under license agreements with the owner of the Swan patents. The first license was taken by General Motors, and nineteen other licenses were taken by companies of national scope during the succeeding years. General Motors was given a more favorable price, perhaps because it was the first automobile manufacturer to take a license or perhaps because of its greater volume of business. The license fees paid by the other manufacturers were uniform in amount; and the damages assessed against the defendant in the pending case were calculated on the same basis. It cannot be gainsaid that these circumstances established a royalty which could be equitably applied to infringing sales made by the defendant under the rules stated as follows in Rude v. Westcott, 130 U.S. 152, 165, 9 S.Ct. 463, 468, 32 L.Ed. 888: "In order that a royalty may be accepted as a measure of damages against an infringer, who is a stranger to the license establishing it, it must be paid or secured before the infringement complained of; it must be paid by such a number of persons as to indicate a general acquiescence in its reasonableness by those who have occasion to use the invention; and it must be uniform at the places where the licenses are issued."

The defendant insists that despite this showing of royalty well established within the automobile industry, there can be no recovery of damages because the invention did not actually affect the performance of the cars upon which it was used, and therefore, had no real value. This argument is beside the point. The defendant, as well as other manufacturers, obviously had reason to believe that the efficiency of its product would be enhanced by the use of the patented device to which the plaintiff had an exclusive right under the patent statute. This property right had a market value manifested by the tribute paid by the defendant's competitors, and there is no escape from the conclusion that the defendant must now pay to the plaintiff the established value of the property which was wrongfully appropriated.

The plaintiff complains that the amount allowed by the District Judge was inadequate (1) because June 19, 1925 the date of plaintiff's notice of infringement to the defendant, was fixed as the beginning of the accounting period, and (2) because November 5, 1930 was chosen as the beginning of the interest period. The defendant began to use the first group of infringing manifolds in July, 1924, during the period when other automobile manufacturers were paying royalties for the privilege of using manifolds under the patent; and the plaintiff therefore urges that recovery of royalties from the defendant should not be limited to the period after notice, as is customarily done under R.S. § 4900, 35 U.S. C.A. § 49, but should cover the whole period of defendant's use. Reference is made

to our decisions in Chesapeake & Ohio R. Co. v. Kaltenbach, 4 Cir., 124 F.2d 375, and Hoeltke v. Kemp Mfg. Co., 4 Cir., 80 F.2d 912. But in these cases there was a misappropriation of the discovery in fraud and breach of confidence which led us to hold that the usual rule should not be followed. It is true that in the pending case the plaintiff made full disclosure of the invention to the defendant and the defendant began to use it before the patent issued, but the defendant's use did not begin until the plaintiff by printed publication and in other ways had given full information of its discovery to the general public. Under these circumstances the decision of the District Judge fixing the beginning of the accounting period at the date of the notice of infringement, required by the statute, was correct.

Under the general rule, interest on damages ascertained on the basis of an established royalty runs from the time when the royalty should have been paid, while interest on damages calculated on the basis of a reasonable royalty does not begin to run, in the absence of special circumstances, until the amount of the damages has been judicially ascertained and liquidated. Tilghman v. Proctor, 125 U.S. 136, 143, 8 S.Ct. 894, 31 L.Ed. 664; Duplate Corp. v. Triplex Safety Glass Co., 298 U.S. 448, 56 S.Ct. 792, 80 L.Ed. 1274; Locomotive Safety Truck Co. v. Pennsylvania R. Co., C.C., 2 F. 677; Munising Paper Co. v. American Sulphite Pulp Co., 6 Cir., 228 F. 700; Merrell Soule Co. v. Powdered Milk Co., 2 Cir., 7 F.2d 297; Richmond Screw Anchor Co. v. United States, 67 Ct.Cl. 63. In accordance with these decisions, interest in the case at bar should run from the dates when royalties should have been paid after the beginning of the accounting period. The District Judge found that the defendant made use of the Swan manifold in the bona fide belief that it was guiltless of infringement, and did not have certain knowledge that it was violating the plaintiff's rights until November 5, 1930, when the final decision in General Motors v. Swan Carburetor Co., 6 Cir., 44 F.2d 24, was rendered. Hence the District Court thought that it would be equitable to calculate interest from that date, especially as the defendant prior thereto had ceased its infringement. These considerations are not without weight but in our view they should not control the decision. The defendant, having received due notice from the patent owner that it intended to insist upon its rights, deliberately continued to make use of the invention after the issue of the patent, and took the risk, now resolved against it by the decisions of the courts, that the patent might be declared valid. Manifestly this infringing use was a wrong from which the tort feasor should not be allowed to profit by being placed in a better position than the manufacturers who respected the owner's rights and paid for licenses under the patent. We cannot accord to a patent infringer the privilege of using a patent, while unsuccessfully challenging its validity in the courts, and exempt him from the burden of paying the recognized price for his delay in meeting his obligations.

The decree of the District Court will therefore be affirmed in all respects, (including its disposition of costs) except as to the interest period. Interest on damages should be calculated from the dates upon which royalties should have been paid after June 19, 1925. The costs in this court will be divided and the case remanded to the District Court for further proceedings.

Modified.