**MARTIN et al. v. WYETH Inc. et al.**

No. 4931.

United States District Court
D. Maryland.

April 10, 1951.

Wm. H. Hudgins, Baltimore, Md., Joshua R. H. Potts, Basel H. Brune, Chicago, Ill., for plaintiff.

Michael P. Crocker and Marbury, Miller & Evans, all of Baltimore, Md., Benjamin B. Schneider, R. Howard Goldsmith, and Schneider & Dressler, all of Chicago, Ill., for defendants.

CHESNUT, District Judge.

The complaint in this case, as originally filed, included five counts. The first count alleged patent infringement; the second, breach of confidential relations and wrongful appropriation of plaintiff's invention before issuance of the patent; the third, infringement of trademark; four, infringement of a Canadian patent; and five, a private civil anti-trust suit. On motion, after extended hearing the fourth and fifth counts were dismissed but with leave to amend, which has not been made.

The plaintiff, Dr. Francis E. Martin, a Pennsylvania veterinarian, is the patentee. The principal defendant at this time is Wyeth Incorporated, a Delaware Corporation, having its principal place of of business in Philadelphia, Pennsylvania, but also doing business in Maryland and elsewhere. It is the alleged infringer of the plaintiff's patent and trademark. Sears Roebuck and Company is a foreign corporation doing business in Maryland, and the Read Drug & Chemical Company, another defendant, is a Maryland Corporation. Both have sold the alleged infringing articles. There were numerous other defendants named in the original complaint, but they are not presently involved in the case here.

The most important question in the case is the validity of the plaintiff's United States patent number 2,498,374 issued February 21, 1950, on application filed October 5, 1945, for a "method and article for treatment of mammary glands." More particularly stated, the patent relates to a special form or kind of treatment for the disease of mastitis of milk cows. Mastitis is an inflamation of the cow's udder. It is a common disease, apparently almost as prevalent in cows as the common cold for people. It may be very acute or chronic in nature and in the aggregate causes a loss which has been estimated to amount to as much possibly as $300,000,000 annually in the national loss of the milk supply.

The plaintiff is a veterinarian who prior to 1944 had had much experience in the diagnosis and treatment of mastitis in dairy herds. Prior to the development of his idea for the particular treatment prescribed in the patent, there had been a number of different methods for treating this disease, the most usual one, as described himself by the patentee, having been the infusion of a liquid medicament by means of a syringe and canula through the streak canal and into the teat canal of the cow. The operation is of surgical nature and properly required careful sterilization of the instruments used, general cleanliness, and is preferably supervised or performed by someone trained in veterinary medicine.

As a better method of administering the medicament, the plaintiff conceived the idea of using a medicated bougie of sufficient size, shape, and rigidity to be inserted through the teat of the cow, and to be milk-soluble; when once inserted it would be contained in place by the sphincter muscle.

In his specifications for the patent the plaintiff said: "A broad object of this invention is the provision of a novel method and article for the treatment of mastitis, so as to effect a cure more quickly and cheaply than has been heretofore possible. In accomplishing this object, I have provided a method and article which may be employed with ordinary precautions and without the surgical procedures which have been so costly in connection with known methods and products, and yet the cure will be accomplished so that the animal may be returned to the production line much more quickly than in cases where the old costly surgical treatment was employed."

In 1945 the plaintiff made and sold, at first for experimental use, about two hundred of the bougies. About this time the new now medically well-known penicillin became largely available, and the plaintiff adopted and used that for the medicament inserted in the bougies. His device was new and found useful, and the sales increased, being in 1947 over 200,000, and in 1948 over a million. They were sold by the plaintiff both nationally and internationally.

While the plaintiff's patent application was pending, his method on the treatment for mastitis in cows was described in a publication by a Dr. Bryan of the University of Michigan in December of 1946 (plaintiff's Exhibit C). Wyeth began to manufacture and sell bougies of a similar nature and method of application. The amounts of their sales in 1948, 1949, and 1950 were even larger than those of the plaintiff's. Some five or six other manufacturers also put out similar products.

The evidence well establishes that if the plaintiff's patent is valid, there have

been infringements by Wyeth, Sears Roebuck, and Read Drug & Chemical Company. The dominant question in the case, however, is whether the plaintiff's idea is legally patentable under the federal statute and judicial decisions. In my view the particular question of patent law that is here applicable is whether this *new use* for medicated bougies meets the required standard of invention for a valid patent. Bougies as carriers soluble in body fluids and containing antiseptic medicaments have been made for over fifty years by Wyeth Incorporated and its predecessors and have long been thorougly well-known and used by the medical profession and have been commonly sold by druggists. They are medicated suppositories intended for use in man or animal by insertion into body cavities having small openings such as the rectum (where there is, of course, a sphincter muscle), in the ears, or the urethra. They have commonly also been used in abnormal orifices caused by wounds. Their size and shape are controlled by the nature and size of the orifice into which they are to be inserted. The medicament that they carry is that designed to alleviate or treat a particular trouble. They are, of course, only a means to an end, the end being the treatment by antiseptic or antibiotic medicament of the disease to be cured or alleviated, as in this case mastitis of the cow's udder. In the separately stated findings of fact will be found a more detailed narration of the facts which from the evidence in this case I consider pertinent and important with respect to the status of the prior art, and other pertinent data relating to the validity of the patent. For the purposes of this opinion I think it sufficient to refer only to those dominant considerations which directly bear upon the particular point of patent law that is here involved.

In support of the validity of the patent, plaintiff's counsel points to (1) presumption of validity from the grant of the patent by the Patent Office, emphasized, he says, in this case by the five years' pendency of the patent and thorough consideration in the Patent Office evi-denced, he further argues, by the voluminous size of the file wrapper and the citation of many prior patents; (2) by the undisputed fact that plaintiff's method of treatment of mastitis is new and useful and has achieved commercial success; (3) that Wyeth Incorporated in its advertisements (containing much that is characteristic of commercial advertising in the way of laudatory statements of the product) referred to the method of administering it as *new and revolutionary,* which is similar to that of the plaintiff. The constituent characteristics of the Wyeth bougie in distinguishing it somewhat from that of the plaintiff's is that the penicillin in the Wyeth bougie is more slowly soluble than the plaintiff's, requires no refrigeration to preserve the effectiveness of the bougies, and it is claimed by virtue of containing procaine penicillin to have better effect than the plaintiff's.

The plaintiff also makes complaint of Wyeth's advertising in that it, being a competitor, gave no credit to the plaintiff as the originator of the new method of treatment. Plaintiff also complains that he has taken care in his advertisements to stress the importance of the use of bougies only by veterinarians after careful diagnosis of the particular conditions affecting the cow needing treatment, while it is contended that the defendant has not taken similar care in its advertisements.

However, in final analysis, really all that the defendant has done is to apply the long and well-known bougie to the new use of treatment of mastitis in milk cows. Does this meet the standard of invention required for a valid patent? This is the controlling question in the case. The defendant's principal contention is that under the well-established judicial decisions the application of merely an old device to a new and analagous use is not patentable, and that the use of the bougie for the treatment of mastitis is clearly a use which is analagous to many former uses of medicated bougies.

■ Before answering the question, which must be based on the wording of the patent statute as interpreted and ap-

plied by authoritative judicial decisions, a closer examination must be made of the ten claims in the patent. They fall into three groups. Claims 1, 6, and 7 relate to the bougie *per se*. Of this group Claim number 7 is typical. It reads: "A bougie intended for insertion through the sphincter muscle-controlled teat orifice of the teat of a milk-producing udder into the teat canal, comprising a carrier that is soluble in said milk at body temperatures, and a medicament carried by said carrier suitable for the treatment of mastitis, said bougie being of elongated slender shape and of suitable dimensions and rigidity to be pushed into said teat canal through said teat orifice against the constrictive force of said sphincter muscle and having one end gradually reduced in cross-section to facilitate such insertion."

On examination of this claim, the elements to be noted are a description of the bougie with respect to (1) its size and shape; (2) its solubility in the milk of the cow; and (3) its suitable dimensions and rigidity to be pushed into said teat canal through said teat orifice against the constrictive force of said sphincter muscle.

I find no patentable novelty in this group of claims for the article itself. The evidence in the case with respect to the prior art is replete with references to bougies of various sizes and shapes suitable for the particular orifice into which they are to be applied. Likewise the prior art refers to the solubility of the bougie after insertion into the orifice by the particular body liquid with which it comes in contact. When applied to the orifice guarded by the sphincter muscle, (as in the rectum) one end of the bougie is naturally adapted to the penetration and the other portion to the retention thereafter. The phrase following the words "suitable dimensions" is merely a functional description of the article which is not sufficient to show a patentable differentiation. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58

S.Ct. 899, 82 L.Ed. 1402; Halliburton Oil Well Cementing Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3; United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 63 S.Ct. 165, 87 L.Ed. 232. The claim falls into the class of patent claims known as a combination of mechanical elements. In view of the prior art I think it clearly cannot be regarded as meeting the required standard of invention. Great Atlantic & Pacific Tea Co. v. Supermarket 340 U.S. 147, 71 S.Ct. 127.

Claims 3, 5, and 8 constitute another group of article claims. In them the bougie is described in connection with a wrapper or container to protect it from contamination before use and also, to some extent at least, from necessary use of the hands in the process of insertion. In Claim 3, after describing the bougie, the latter is described as follows: "And a flexible pliant wrapper covering one of said points and a substantial part of said bougie whereby said device is adapted to be used by gripping said wrapper, the exposed point at the other end inserted in the entrance to said canal, and the insertion completed by applying pressure through said wrapper to subject the cam surface thereat to constrictive pressure by said sphincter muscle."

Here again the prior art very fully shows various types and kinds of wrappers and envelopes to avoid contamination.[1] In practice neither the plaintiff nor defendant uses the kind of wrapper illustrated in the patent drawings but instead both use merely a flat surface envelope closed at both ends but which can be easily torn open at one end and the bougie pressed out by the fingers when applied to the bottom. These claims seem clearly invalid as a mere aggregation and not a patentable combination. Great Atlantic & Pacific Tea Co. v. Supermarket, 340 U.S. 147, 71 S.Ct. 127; Reckendorfer v. Faber 92 U.S. 347, 23 L.Ed. 719, a pencil and eraser in combination; Novocol Chemical Mfg. Co. v. Powers & Anderson Dental Co., 4 Cir., 128 F.2d 904, 907.

1. For instance, see defendant's Exhibits 14, Remington; 15 Genese; 16 Wadel; 22 Schellberg. See also the evidence of defendant's witnesses Barol and Brenner.

Claims 9 and 10 in the patent form the third group. These claims fall into the category of a method or process patent rather than for an article or a combination of mechanical elements. In treating Claim 9 as typical, we find it reads as follows: "In the treatment of a mastitis-infected, milk-producing udder having a teat with a teat canal, streak canal and orifice closed by a sphincter muscle, the method of which comprises: gradually overcoming the constrictive force of said sphincter muscle by pushing into said orifice and streak canal the reduced end of an elongated, slender bougie carrying a mastitis-treating medicament and having a body which is milk-soluble at body temperatures and which is of sufficient rigidity and strength to withstand the stresses of insertion into said orifice against the constrictive force of said sphincter muscle, and continuing said pushing force until said sphincter muscle completely entraps said bougie within said teat canal."

It will be noted that the claim merely describes the method or process of inserting the bougie, as described in the article claims, into the cow's udder. This is a new use of a medicated bougie, but its application through the sphincter muscle and its retention in the canal is quite similar to the use of a bougie for the rectum of a person. The new use seems therefore clearly for an analagous purpose. The crux of the case is the validity or invalidity of these method or process claims.

The Federal power to grant patents is found in Article I, Section VIII of the Constitution which reads: "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;"

The extent to which Congress has exercised this power is to be found in U.S. C.A. Title 35, § 31. This section states what may be patented, and its pertinent language is: "Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof * * * not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than one year prior to his application, and not in public use or on sale in this country for more than one year prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor."

It will be noted that the thing patentable must be either (1) art; (2) machine; (3) manufacture or, (4) composition of matter. The statute does not expressly mention as patentable a process or method of medical or surgical treatment; and unless the latter can be classed as an art, it is not patentable. The claims under consideration are not for a particular medicament as a composition of matter. There is no contention by the patentee here for an exclusive right in the administration of penicillin or other drug. To be patentable the subject matter must also be new and useful, not in public use or a matter of public information for more than a year prior to the patent application, and it must have been *invented or discovered* by the patentee. The statute does not define the words "invention or discovery." The proper application of this phrase is therefore necessarily left for judicial construction. Numerous recent decisions of the Supreme Court have made it abundantly clear that in addition to the subject being "new and useful" it must also constitute an invention. No precise definition of what constitutes "invention" has yet been judicially declared; but the most recent authoritative judicial decisions have emphasized the necessity of applying a more rigid test as to the required standard of invention, especially with regard to combination patents than has been applied in some earlier cases. Great Atlantic & Pacific Tea Co. v. Supermarket, 340 U.S. 147, 71 S.Ct. 127; Vapor-Blast Mfg. Co. v. Pangborn Corp., 4 Cir., 186 F.2d 230. In-

stances of valid patents for a method of medical or surgical treatment have been rare indeed, although a few cases may be found in which therapeutic agents, such as aspirin, have been held patentable. Bayer Co., Inc. v. United Drug Co., D.C., 272 F. 505, 507; Ruskin v. Coe, D.C., 58 F.Supp. 424; Dick v. Lederle Antitoxin Laboratories, D.C., 43 F.2d 628.

The only case called to my attention which seems apposite here was for the method of applying an innoculation against scarlet fever. Doctors and surgeons have seldom thought it desirable to try to patent their new procedures for human relief.

The plaintiff, himself a veterinary doctor, stated that he had first had no thought to obtain a patent for his use of the bougie and was finally persuaded to do so for the purpose of controlling its use by limiting it to distribution through veterinarians. The grant of a patent carries with it the right to exclude others from its use for a period of seventeen years. The professional ethics of doctors and surgeons are more consistent with the widespread use of their medical and surgical discoveries for the benefit of mankind than in obtaining a monopoly to control their discoveries for personal commercial advantage. In this respect it would seem also that public interest is here involved. However, it is at least assumed by counsel for both sides in this case that a medical or surgical method may, if otherwise patentable, be placed in the category of an art and therefore within reach of the statute.

So treating the matter, we come to the precise question of patent law here involved, which is whether such a new use for an old device can be regarded as an invention. The plaintiff's discovery of this new use meets many of the objective tests for patents which have in some cases been found sufficient to establish validity. Thus the plaintiff here has (1) presumption of validity from the Patent Office grant; (2) a new and useful application of the old device; (3) commercial success (a factor to be considered in doubtful cases); and (4) recognition of use-

fulness and success by the defendant's adoption of the plaintiff's idea. But it is equally clear that all these factors combined are not sufficient to establish the patent unless this new use of the old device meets the required standard of invention.

Upon consideration of numerous recent decisions of the Supreme Court, I feel obliged to reach the conclusion that these patent claims for a method or process are invalid because not involving invention. They do not involve invention because they constitute merely the application of an old and well-known device to a new use which is analogous to former uses of the device. That the use is analagous seems too clear to necessitate further discussion, and indeed it has not been expressly challenged by counsel for the plaintiff. I think this is a conclusion which must be derived from the following: Mandel Bros. Inc., v. Wallace, 335 U.S. 291, 296, 69 S.Ct. 73, 93 L.Ed. 12; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 327–328, 65 S.Ct. 647, 89 L.Ed. 973; Lovell Mfg. Co. v. Cary, 147 U.S. 623, 637, 13 S.Ct. 472, 37 L.Ed. 307; Roberts v. Ryer, 91 U.S. 150, 157, 23 L.Ed. 267; Old Town Ribbon & Carbon Co. Inc., v. Columbia Ribbon & Carbon Mfg. Co., 2 Cir., 159 F.2d 379, 382; Vapor-Blast Mfg. Co. v. Pangborn Corp., 4 Cir., 186 F.2d 230; Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 473, 55 S.Ct. 449, 79 L.Ed. 997; Toulmin Handbook on Patents (1949) Sects. 95–98; Walker on Patents (6th Ed.) Sects. 76, 77; 69 C.J.S., Patents, § 66; Morton v. New York Eye Infirmary C.C.S.D.N.Y., 17 Fed.Cas. p. 879, No. 9,865, 5 Blatchf. 116. In the case last cited the Circuit Court consisted of Circuit Justice Nelson and District Judge Shipman. It was there held in a fully considered opinion that the administration of ether (a well-known subject) to induce anaesthesia in animals was not patentable. There, as here, the instrument used in the surgical process was old, while the use to which it was put was new. The case has frequently been cited with approval,

and, so far as I know, has never been overruled.

My conclusion of law, therefore, is that the claims of the patent in suit here relied on by the plaintiff are invalid for want of required standard of invention.

The Second Count of the plaintiff's complaint seeks to recover damages from Wyeth for an alleged breach of confidential relations by virtue of which the defendant learned of the plaintiff's alleged invention prior to the issuance of the patent and began manufacturing the competing article. This contention is based upon the principle to be found in Hoeltke v. C. M. Kemp Mfg. Co., 4 Cir., 80 F.2d 912.

■ The evidence in the case wholly fails to support this charge. The Hoeltke case is inapplicable here on the facts. There were no confidential relations between the parties, and knowledge of the plaintiff's alleged invention had been fully and publicly disclosed in an article on veterinary medicine entitled "Penicillin Mastics in the Treatment of Chronic Streptococcic Mastitis" published by Dr. C. S. Bryan of University of Michigan in December of 1946. It was only after this publication that Wyeth, in July of 1948, began the sale of this competing article, as did also numerous other manufacturers. (See plaintiff's Exhibit C.)

By this publication the information entered the public domain except for such protection as might be secured by Martin through the Patent Laws. Restatement of the Law of Torts, Vol. 4, Sec. 759 pages 5, 6; Tri-State Plastic Molding Company v. Ruzak Industries Inc., 6 Cir., 1950, 181 F.2d 809, 810, 811; Swan Carburator Co. v. Nash Motors Co., 4 Cir., 133 F.2d 562, 567.

■ But apart from the legal effect of the public information, the evidence does not establish the existence of the confidential relationship alleged. The only evidence upon the subject is found in the verbal testimony of the plaintiff Martin and defendant's witness Rettew, and a letter from Martin to Stuart Smith, % Wyeth Incorporated, Philadelphia, Penn-

sylvania, dated November 5, 1945. In the latter part of 1944, either before or after Martin's first application for the patent, he was desirous of obtaining a supply of penicillin. He had some acquaintance with Rettew, who lived near him in Pennsylvania. Rettew was at that time the manager of a laboratory engaged in the production of penicillin, but not in the production of drugs. Rettew was at that time not an employee of Wyeth but of some other affiliated corporation. The purpose of Martin's calling Rettew was to see if he could obtain a supply of penicillin. He explained only quite generally why he wanted it, but Rettew told him that he was not in a position to supply it. Rettew did not communicate any information about Martin's idea to any superior officer. About a year later, after the laboratory managed by Rettew had been acquired by the Wyeth corporation, Martin again went to see Rettew and inquired from Rettew, who had then become an employee of Wyeth, whether his employer, Wyeth, would be interested in marketing Martin's bougies. Rettew again did not communicate with his superior officers but merely referred Martin to Stuart Smith, a superior employee of Wyeth. Thereupon Martin wrote the letter of November 5, 1945 to Smith (Plaintiff's Exhibit D).

In this letter Martin said he had been referred to Smith by Rettew "In reference to penicillin calcium for manufacturing purposes." Only briefly he stated he had applied for a patent and would start manufacturing as soon as possible and ended with the sentence "If you can furnish bulk penicillin calcium please advise me as to price." Smith's reply was that they could not furnish the pencillin. This is substantially all the evidence upon the point. Martin, as a witness, did not himself expressly claim the existence of confidential relations with Rettew. The charge that there was such a relationship seems to be rather an argumentative inference by counsel for the plaintiff rather than based on any actual fact. While I do not think that the evidence of Martin alone is sufficient to warrant the infer-

ence, it is very clear from Rettew's testimony that there was no such relationship; nor does any appear from Martin's letter to Smith. I conclude therefore that there is no adequate basis in the evidence to support the second count of the plaintiff's complaint.

The third count of the complaint charges trademark infringement. On August 12, 1947, the plaintiff secured trademark registration number 431831 for the trademark of "Mastics" "for a bougie and the like containing a compound for treatment of mammary glands." He thereafter used this trademark in connection with his sales of penicillin bougies. On August 2, 1949, Wyeth obtained trademark registration number 513202 for the trademark "Penstix" without interference with the former registration of the plaintiff and without opposition by the plaintiff, and no cancellation proceeding has been filed by the plaintiff against Penstix; although at the end of the hearing in this case the plaintiff in open Court asked leave to amend the complaint by prayers for cancellation of the defendant's trademark Penstix.

I conclude from the evidence that Penstix as used by Wyeth is not an infringement of the mark Mastics used by the plaintiff. There was very little evidence introduced by either party on this issue; but it did appear that the word "Sticks" has heretofore been used to mean slender rod-like bougies. There also are references in early literature relating to bougies in which, when they were used in a shape not unlike that of a match stick, they were called "Sticks." There was no substantial evidence of any actual or probable confusion in the trade, nor was there any evidence in any way indicating misdescription by Wyeth of its articles or any effort to simulate plaintiff's product. The size and color of the packages of the plaintiff and the defendant are distinctly disparate. All the defendant's packages and advertising clearly designate Wyeth as manufacturer. The evidence as a whole is in no way suggestive of any motivation on the part of Wyeth, a large and long well-known manufacturer of therapeutic products, to simulate or attempt to palm off its product for that of the plaintiff's especially when, as the plaintiff complains, the volume of sales by Wyeth under its own name has been substantially greater than that of the plaintiff.

Both Mastics and Penstix are two-syllable words in which the second syllable is merely descriptive of the article. The first syllable of the two marks is the dominant one to indicate the origin, and "Pen" is sufficiently dissimilar from "Mas" to reasonably avoid any likelihood of confusion in the two words. The first syllable of "Mastics" is suggestive rather than descriptive of a cure for mastitis; while the first syllable of "Penstix" is suggestive but not descriptive of penicillin or of a pencil. On the whole evidence I conclude that "Penstix" does not infringe "Mastics." See Dixie-Cola Laboratories, Inc., v. Coca-Cola Co., 4 Cir., 117 F.2d 352, 355, certiorari denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505; Glenmore Distilleries Co. v. National Distillers Products Corp., 4 Cir., 101 F.2d 479; certiorari denied 307 U.S. 632, 59 S.Ct. 835, 83 L.Ed 1515; Pennzoil Co. v. Crown Central Petroleum Corporation ("Pennzoil" v. "Greenzoil") D.C.Md., 50 F.Supp. 891, 898; Affirmed, 4 Cir., 140 F.2d 387; certiorari denied 322 U.S. 750, 64 S.Ct. 1261, 88 L.Ed. 1581.

My final conclusion is that counts 1, 2, and 3 of the complaint must be dismissed with taxable costs allowed to the defendant. Counsel may promptly submit the appropriate order in due course.

There remains to say a word with regard to the counterclaim filed by Wyeth Incorporated against the plaintiff. It seeks to recover damages for a circular published and distributed by plaintiff to 10,000 veterinarians after the institution and pending the hearing of this case. Wyeth charges that the contents of this circular were libelous, defamatory and damaging to it with respect to its business practices and products. But this issue has not yet been adjudicated. The sub-

ject matter presents questions of law which are so different from and unrelated to those involved in the patent case that it seemed to me inadvisable to possibly tend to blunt the sharp focus of attention on the dominant question by contemporaneous consideration of such a different subject matter. Therefore a further hearing on the issue raised by the counterclaim will be postponed to a later time when counsel desire to bring it on for adjudication.